**Joseph BUFFALO, Petitioner–Appellee,**

v.

**Franklin SUNN, Director D.S.S.H., Respondent-Appellant.**

No. 87–2032.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided Aug. 16, 1988.

Before WALLACE, REINHARDT and NOONAN, Circuit Judges.

WALLACE, Circuit Judge:

Buffalo was convicted of first-degree robbery and first-degree assault in Hawaii state court. Following an unsuccessful direct appeal and state collateral attack, he filed a petition for a writ of habeas corpus with the United States District Court for the District of Hawaii. The district court conditionally granted the writ. We have jurisdiction pursuant to 28 U.S.C. § 2253. Because we conclude that the district court should have held an evidentiary hearing in order to resolve a factual dispute over whether Buffalo had demonstrated "cause" under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (*Sykes*), for failing to appeal his collateral attack to the Hawaii Supreme Court, we reverse and remand for an evidentiary hearing.

I

On September 25, 1981, a jury convicted Buffalo of first-degree robbery and first-degree assault. Buffalo appealed his conviction to the Hawaii Intermediate Court of Appeals and alleged that his counsel rendered constitutionally ineffective assistance, that the admission of certain hearsay testimony deprived him of his due process right to a fair trial, and that certain hearsay statements were inadmissible under Hawaii's rules of evidence. The court of appeals rejected both his ineffective assistance of counsel and his due process claims and declined to address the merits of the evidentiary issues because of a failure to comply with Rule 3(b)(5) of the Hawaii Supreme Court, which requires a concise statement of the evidentiary points raised on appeal. Buffalo then filed a pro se letter with the Hawaii Supreme Court requesting, in effect, a writ of certiorari. The Hawaii Supreme Court denied the writ as untimely.

On April 11, 1984, Buffalo filed a petition for post-conviction relief pursuant to Rule 40 of the Hawaii Rules of Penal Proce-

Charlene Y. Iboshi, Deputy Pros. Atty., Hilo, Hawaii, for respondent-appellant.

Michael R. Levine, Federal Public Defender, Honolulu, Hawaii, for petitioner-appellee.

dure[1] alleging that he received ineffective assistance of counsel. The Public Defender was designated as court-appointed counsel. On July 31, 1984, Buffalo moved for the appointment of new counsel, alleging, in part, that the Public Defender had a conflict of interest because Buffalo's Rule 40 petition alleged that a member of the Public Defender's office had rendered ineffective assistance of counsel. On September 17, 1984, the Hawaii trial court denied the motion for new counsel and found the underlying petition "patently frivolous and without trace of support."

The Hawaii Intermediate Court of Appeals affirmed the denial of appointment of counsel on June 24, 1985. On July 15, the same court affirmed the trial court's rejection of Buffalo's Rule 40 petition on the merits. Buffalo did not appeal this final order of the court of appeals, allegedly because a prison lockdown made it impossible for him to prepare and file a writ of certiorari within the ten-day time limit prescribed by the Hawaii Supreme Court.

On August 15, 1985, Buffalo filed a petition for a writ of habeas corpus with the United States District Court for the District of Hawaii pursuant to 28 U.S.C. § 2254. In response, on April 10, 1986, the Hawaii prison authorities (State) filed a motion to dismiss Buffalo's writ of habeas corpus for failure to exhaust state remedies on both direct appeal and on collateral attack. On June 19, 1986, the district court denied the State's motion to dismiss. The district court agreed with the State (1) that Buffalo had to establish cause for his procedural defaults on both direct and collateral review under *Sykes,* 433 U.S. 72, and (2) that he failed to establish cause for the procedural default on direct review. The district court, however, rejected the State's argument that Buffalo failed to establish cause for failing to appeal the Hawaii Intermediate Court of Appeals denial of his collateral attack. Instead, the district court determined that a prison lockdown prevented Buffalo from filing a writ of certiorari from the denial of his collateral attack by the court of appeals, concluding that this official impediment provided the requisite "cause" for Buffalo's procedural default, and that Buffalo also established prejudice under *Sykes.*

1. Haw.R.Pen.P. 40 provides:

> *Rule 40.* POST–CONVICTION PROCEEDING.
>
> (a) *Proceedings and Grounds.* The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:
>
> (1) *From Judgment.* At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:
>
> (i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawaii;
>
> (ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;
>
> (iii) that the sentence is illegal;
>
> (iv) that there is newly discovered evidence; or
>
> (v) any ground which is a basis for collateral attack on the judgment.
>
> For the purposes of this rule, a judgment is final when the time for direct appeal under Rule 4(b) of the Hawaii Rules of Appellate Procedure has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated, provided that a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court.
>
> . . . .
>
> (3) *Inapplicability.* Said proceeding shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.
>
> . . . .
>
> (h) *Review.* Any party may appeal to the supreme court from a judgment entered in the proceeding in accordance with Rule 4(b) of the Hawaii Rules of Appellate Procedure.
>
> . . . .

The State then filed a motion for reconsideration attacking the district court's finding that a lockdown prevented Buffalo from filing a writ of certiorari to the Hawaii Supreme Court during his collateral attack. The district court denied this motion for reconsideration. On March 31, 1987, the district court conditionally granted Buffalo's petition for habeas corpus, reasoning that, because Buffalo's trial counsel failed to object to allegedly prejudicial hearsay testimony, Buffalo received constitutionally ineffective assistance of counsel under the standards announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The State timely filed a notice of appeal.

## II

We first discuss Buffalo's challenge to our jurisdiction. He advances two reasons why the State's notice of appeal was ineffective. We, of course, review our jurisdiction de novo. *Peter Starr Production Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

First, Buffalo argues that the State's notice of appeal did not evince a "clear intent" to appeal. The notice of appeal states: "Franklin Sunn ... hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order ... entered ... on [March 31, 1987], unless the ... District Court ... reconsiders its Order...." Buffalo stresses that the clause beginning "unless ..." demonstrates that the State conditioned its intention to appeal on the disposition of a motion to reconsider. He cites *McMillan v. Barksdale*, 823 F.2d 981 (6th Cir.1987) (*McMillan*), and *Mosley v. Cozby*, 813 F.2d 659 (5th Cir.1987) (*Mosley*), for the proposition that a conditional intent to appeal does not provide us with jurisdiction.

■ It is true that a particular notice of appeal could lack a sufficiently clear intent to appeal such that we would lack jurisdiction. *Cf. Cel–A–Pak v. California Agricultural Labor Relations Board*, 680 F.2d 664, 667 (9th Cir.) (per curiam) (discussing Fed.R.App.P. 3(c)), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

The notice of appeal before us, however, sufficiently demonstrated the State's intent to appeal and complied with the requirements of Fed.R.App.P. 3(c). Rule 3(c) requires a notice of appeal to specify (1) the party taking the appeal, (2) the order from which the appeal is taken, and (3) the court to which the appeal is taken. *See* Fed.R. App.P. 3(c).

*Mosley* and *McMillan* do not require a different result. In *Mosley*, Mosley filed a "Motion to Reconsider Order or in the Alternative, Motion for Leave to Take an Interlocutory Appeal In Forma Pauperis." 813 F.2d at 660. The Fifth Circuit concluded that it lacked jurisdiction because the "primary relief" that Mosley sought in his motion was reconsideration, and he sought leave to appeal *only if* the district court denied reconsideration. *Id.* This motion, therefore, did not show a sufficiently clear intent to appeal. *Id.* In contrast to *Mosley*, the "primary relief" the State sought was to appeal. Whereas an appeal was sought in *Mosley only in* the event that reconsideration by the district court was denied, an appeal was intended in this case *unless* reconsideration was granted. In other words, the appellant in *Mosley* desired an appeal only as a default remedy, while the State in this case affirmatively pursued this appeal as its first choice of remedy. Because we conclude that *Mosley* is distinguishable, we do not decide whether we would adopt that decision were we confronted with a similar case.

*McMillan* actually supports the conclusion that we have jurisdiction. The Sixth Circuit there stated: "Any document that meets the requirements of Rule 3(c) and is filed within the time prescribed by Rule 4(a) can function as a notice of appeal.... To reach a contrary holding would ... exalt form over substance." 823 F.2d at 983. This statement squarely applies to the State's notice of appeal.

■ As a second ground for attacking this court's jurisdiction, Buffalo argues that we should treat the State's notice of appeal as a motion to reconsider and dismiss the appeal pending the district court's

decision on whether to reconsider. Buffalo cites cases that recognize that filing a motion to reconsider under Fed.R.Civ.P. 59(e) tolls the time for filing an appeal and nullifies an appeal filed before a decision on the motion to reconsider. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 60–61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (per curiam) (*Griggs*); *United States v. Gargano*, 826 F.2d 610, 611 (7th Cir.1987) (*Gargano*).

*Griggs* and *Gargano*, however, are not on point. In both cases, appellants had filed motions for reconsideration which were separate from their notice of appeal and which were still pending after the appeal was noticed. *See Griggs*, 459 U.S. at 57, 103 S.Ct. at 401; *Gargano*, 826 F.2d at 611. Here, by contrast, the State did not ever file a motion to reconsider, either prior or subsequent to bringing this appeal.

Nor, as with the motion at issue in *Mosley*, can the State's notice of appeal be treated as effectively a motion to reconsider. *Mosley* does not help Buffalo because, as pointed out earlier, the court concluded that Mosley was primarily seeking to have the district court reconsider its decision. 813 F.2d at 660. Unlike the motion filed in *Mosley*, the State's notice of appeal does not demonstrate that the relief the State sought in filing the notice of appeal was to have the district court reconsider its decision to grant the conditional writ of habeas corpus. *Cf.* Fed.R.Civ.P. 7(b)(1) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."). Therefore, we do not treat the State's notice of appeal as a motion to reconsider.

### III

The State first argues that we should remand this case to the district court with instructions to hold an evidentiary hearing to resolve a factual dispute underlying whether Buffalo demonstrated a sufficient "cause" for failing to file a writ of certiorari with the Hawaii Supreme Court in the

course of his state collateral attack of his conviction. This argument, if correct, would obviate the need for us to consider the merits of the district court's cause and prejudice analysis or the ultimate issuance of the writ.

The State contends that the district court erred when it accepted Buffalo's claim in two affidavits that a prison lockdown in July 1985 prevented him from filing the writ and rejected the prison administrator's affidavit that prisoners had access to legal materials and could communicate with the courts during the lockdown. The district judge concluded that the prison administrator's affidavit was lacking in evidence "that any prisoner had successfully conducted legal business during the lockdown," that as a district judge he had no practical ability to investigate the actual conditions affecting Buffalo in July 1985, and that based on his own experience with habeas petitions by prisoners in other Hawaii prisons, Hawaii prison officials did not always take the steps necessary to comply with the due process rights of prisoners. Thus, the judge stated that "absent a specific contrary statement in the record as to [Buffalo's] circumstances in July 1985," he was compelled to conclude that the conditions imposed by prison administrators did not "provide [Buffalo] with access to the courts."

### A.

The State's suggestion that we remand for an evidentiary hearing implicates "[t]wo related but distinct doctrines of federal habeas corpus law—exhaustion of state remedies and state procedural default.... Both doctrines stem from the basic principle of federalism that federal courts should accord due respect to the role of state courts in enforcing the prohibition against unconstitutional confinement embodied in the writ of habeas corpus." *Jackson v. Cupp*, 693 F.2d 867, 868–69 (9th Cir.1982) (per curiam) (*Jackson*).

A petition for a writ of habeas corpus under 28 U.S.C. § 2254 generally requires a petitioner seeking habeas relief to exhaust any available state remedies at the

time he files for federal habeas relief. 28 U.S.C. § 2254(b); *see Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 1673–75, 95 L.Ed.2d 119 (1987) (*Granberry*); *Rose v. Lundy,* 455 U.S. 509, 515–20, 102 S.Ct. 1198, 1200–04, 71 L.Ed.2d 379 (1982) (*Lundy*); *Schwartzmiller v. Gardner,* 752 F.2d 1341, 1344 (9th Cir.1984) (*Schwartzmiller*). An appellate court, however, may give relief if state remedies are exhausted by the time it acts, even if the remedies were not exhausted when the habeas corpus petition was filed. *Schwartzmiller,* 752 F.2d at 1344. The exhaustion requirement serves to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203. In so doing, the requirement serves to minimize friction between federal and state courts by allowing the state an initial opportunity to pass upon and correct alleged violations of a petitioner's federal rights, *see id.,* and to foster increased state court familiarity with federal law. *See id.* at 519, 102 S.Ct. at 1203. Requiring exhaustion of state remedies prior to federal habeas review reflects principles of federal-state comity rather than jurisdiction. *Granberry,* 107 S.Ct. at 1673–75; *Schwartzmiller,* 752 F.2d at 1344.

■ If no state remedies remain available, the petitioner may have satisfied the exhaustion doctrine. Before reaching this conclusion, however, a federal court must inquire *why* state remedies are not available. *Jackson,* 693 F.2d at 869. If state remedies are not available because the petitioner failed to comply with state procedures and thereby prevented the highest state court from reaching the merits of his claim, then a federal court may refuse to reach the merits of that claim as a matter of comity. *See id.* at 869 & n. 2. This failure to comply with reasonable state procedures unless excused, in effect, constitutes a waiver of the claim. *See id.* at 869.

Buffalo concedes that he never gave the Hawaii Supreme Court an opportunity to review the merits of his ineffective assistance of counsel claim and that state remedies are no longer available. Buffalo also concedes that he must, therefore, satisfy the standards of "cause" and "prejudice" established by the Supreme Court, or else this procedural default will be deemed to have waived his federal constitutional claim. *See Engle v. Isaac,* 456 U.S. 107, 128–29, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506; *Hughes v. Idaho State Board of Corrections,* 800 F.2d 905, 907–08 (9th Cir. 1986) (cause and prejudice standard applies to the failure to appeal even if the petitioner is a pro se prisoner). Under the cause and prejudice standard, the petitioner must show cause for failing to comply with state procedural rules and actual prejudice resulting from the constitutional error. *See Murray v. Carrier,* 477 U.S. 478, 485–92, 106 S.Ct. 2639, 2644–48, 91 L.Ed.2d 397 (1986) (*Carrier*); *Reed v. Ross,* 468 U.S. 1, 11–12 & n. 8, 104 S.Ct. 2901, 2907–08, & n. 8, 82 L.Ed.2d 1 (1984); *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982) (*Frady*). In the case before us, we focus on whether Buffalo has proven cause.

Although the Court has not attempted to catalog all situations in which a petitioner would establish "cause," the Court has provided some guidance:

[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials," made compliance impracticable, would constitute cause under this standard.

*Carrier,* 477 U.S. at 488, 106 S.Ct. at 2646 (citations omitted); *accord Amadeo v. Zant,* —— U.S. ——, 108 S.Ct. 1771, 1776–77, 100 L.Ed.2d 249 (1988) (*Amadeo*); *see Roberts v. Arave,* 847 F.2d 528, 530 (9th Cir.1988) (discussing the "cause" standard).

**B.**

In this case, there have been two procedural defaults: a failure to file a timely writ of certiorari on direct review and a failure to file a timely writ of certiorari on collateral review. The district court concluded that Buffalo's tardiness on direct review constituted a procedural default and that Buffalo failed to establish cause. On appeal, Buffalo does not question this determination. Nor does the State argue that the default on direct appeal bars this federal habeas review.

■ The exhaustion doctrine ensures that the highest state court is given one full and fair opportunity to review alleged constitutional error before federal habeas review ensues. *See* 28 U.S.C. § 2254(c) (exhaustion is not complete if the petitioner may raise the issue in state court "by any available procedure"). Under Haw.R.Pen. P. 40, the State allowed Buffalo to raise the same ineffective assistance of counsel claim in his post-conviction proceeding that he raised on direct appeal. Although the Hawaii state courts might have invoked Rule 40(a)(3) to conclude that his failure to file a timely writ of certiorari on direct review barred his Rule 40 petition, they did not. Rather, the state trial court and the Hawaii Intermediate Court of Appeals reviewed the claim on the merits in the Rule 40 proceeding. In view of the decision of the Hawaii appellate court to reach the merits of his appeal, Buffalo's failure to file a timely writ of certiorari on *direct* review does not constitute a procedural default triggering the cause and prejudice standard in a subsequent federal habeas proceeding. *See Walker v. Endell,* 828 F.2d 1378, 1382 (9th Cir.1987) (when a state appellate court disregards a state procedural default and reviews a claim on the merits, the cause and prejudice standard does not apply); *Vickers v. Ricketts,* 798 F.2d 369, 373 (9th Cir.1986) (same), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987). Buffalo concedes, however, that his failure to file a timely writ of certiorari upon denial of his petition under Rule 40 by the Hawaii appellate court does constitute a state procedural default implicating the cause and prejudice standard in this federal habeas proceeding. We now consider whether the district court erred in failing to conduct an evidentiary hearing to resolve underlying factual disputes before concluding that Buffalo's failure to present his ineffective assistance of counsel claim to the Hawaii Supreme Court in the course of his Rule 40 proceeding was justified by a sufficient showing of "cause."

**C.**

Buffalo contends that the lockdown prevented him from filing a timely writ of certiorari with the Hawaii Supreme Court following the Hawaii Intermediate Court of Appeals' denial of his Rule 40 petition. Charles K. Akana, Jr., the Acting Administrator at the Kulani Correctional Facility in July of 1985, disagrees. When the State moved for reconsideration of the district court's order, he submitted an affidavit stating:

5. [I am] personally acquainted with Joseph Buffalo, plaintiff herein; Mr. Buffalo had not reported, to [my] knowledge, any late delivery of court items during the general time period of July–August 1985;

6. Mr. Buffalo was known to bring his needs or complaints to Kulani staff in writing, and was familiar with and availed himself of the "written request" procedure and the grievance process;

7. If Mr. Buffalo had a pressing court deadline or a need to deal with a legal matter, he could have made his needs known in a variety of ways:

(1) he could have put in a written request, a grievance, or an emergency request or grievance;

(2) he could have related any urgent matter by using the intercom in his dormitory which allowed inmates to speak directly with staff at the Control Station; and

(3) he could have brought the matter to staff's attention at head count, which was conducted three times a day at the control station and was a time at which inmates did indeed voice their needs or complaints;

8. Kulani policies required that inmates be permitted to attend to such legal business and he would have so permitted [sic], regardless of the lockdown.

An inmate would have been allowed to write to the courts during this time period in any event, regardless of the lockdown.

In denying the State's motion to reconsider, the district judge rejected Akana's affidavit as insufficient because it did not expressly refute Buffalo's claim. In addition, he relied on his own personal knowledge that Hawaii prison administrators did not always comply with the requirements of due process. He concluded that, in light of the official impediment, Buffalo had met his burden of proof and established cause for his procedural default. *See Amadeo,* 108 S.Ct. at 1776–77 (procedural default excused if caused by some external, objective impediment); *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645 (same).

■■■ We hold that the district court erred by resolving the issue of cause based on the conflicting affidavits. In a *habeas* case, when there are only conflicting affidavits regarding the facts underlying the issue of cause, the district court must hold an evidentiary hearing. Akana's affidavit admittedly does not expressly refute Buffalo's statement that the lockdown prevented Buffalo personally from filing legal papers during the lockdown by averring that prisoners were not hindered in their dealings with the courts by the lockdown. Nonetheless, the affidavit raises a question of fact concerning Buffalo's access to the courts.

When underlying facts concerning cause, such as the existence of an external impediment arising from interference by officials, are in dispute, a district court should conduct an evidentiary hearing. *See Hines v. Enomoto,* 658 F.2d 667, 674 (9th Cir.1981). A district court conducting federal habeas review should not ordinarily attempt to resolve contested issues of fact based on affidavits alone unless there is other evidence in the record dispositive of the issue or unless the state court has made the relevant factual findings. *See Walker v. Johnston,* 312 U.S. 275, 283, 286–87, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941); *Watts v. United States,* 841 F.2d 275, 277 (9th Cir.1988) (per curiam) (*Watts*); *Jordan v. Estelle,* 594 F.2d 144, 145–46 (5th Cir.1979)

(per curiam) (*Jordan*); *Scott v. Estelle,* 567 F.2d 632, 633–34 (5th Cir.1978) (*Scott*); *Campbell v. Minnesota,* 487 F.2d 1, 4 (8th Cir.1973). An evidentiary hearing is especially appropriate when the district court is presented with only conflicting affidavits, uncorroborated by other evidence in the record. *See Jordan,* 594 F.2d at 145–46. That was the situation that the district court faced here.

In reaching this conclusion, the district court erroneously concluded that Akana's affidavit was "lacking in evidence" simply because it failed to state "I am positive that Joseph Buffalo had access to the courts during the lockdown because I am aware of other prisoners who had successfully filed legal papers during this same period." Our review of the affidavits indicate that they raise a credibility issue. Given the lack of other dispositive evidence in the record, the district court should have conducted an evidentiary hearing. *See Watts,* 841 F.2d at 277.

Moreover, the district judge erred in relying on his personal knowledge concerning Hawaii prison systems and prison administrators. *Cf. Amadeo v. Kemp,* 773 F.2d 1141, 1144–45 (11th Cir.1985) (per curiam) (*Kemp*) (in habeas proceeding alleging ineffective assistance of counsel due to failure to challenge jury composition, it was error for district court to rely on his personal familiarity with a county jury selection system rather than holding an evidentiary hearing to resolve facts in that particular case), *proceeding after remand,* 816 F.2d 1502 (11th Cir.1987) (per curiam), *rev'd,* —— U.S. ——, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988); *Scott,* 567 F.2d at 663–64 (error for magistrate to rely on his own ex parte oral communications with a witness to resolve disputed issue of fact). There is simply no way in which we can assess on appeal the merits of the personal knowledge of the district judge. *See Kemp,* 773 F.2d at 1144–45.

■■■ In defense of the district court's decision, Buffalo makes two arguments. First, he cites *United States v. Irwin,* 612 F.2d 1182 (9th Cir.1980), in which a criminal defendant, on direct appeal, argued that the district court erred in denying his mo-

tion to dismiss an indictment without holding an evidentiary hearing. We stated that "if the affidavits [the parties submitted] show as a matter of law that appellant was or was not entitled to relief, no hearing was required." *Id.* at 1187. Buffalo contends that this principle applies to the affidavits submitted in this case. Unlike the affidavits in *Irwin*, however, the affidavits that Buffalo and Akana submitted do not show "as a matter of law" that the lockdown caused Buffalo's failure to file a timely writ of certiorari in July of 1985. The affidavits raise credibility issues that only an evidentiary hearing can resolve. *See Jordan,* 594 F.2d at 146 (ordinarily contested facts may not be decided on affidavits alone, absent other dispositive evidence in the record).

■ Second, Buffalo argues that the State's failure to request an evidentiary hearing on the issue of cause in the district court waived the issue. The State's failure to do so, however, is not a waiver. *See Kemp,* 773 F.2d at 1145. When there is a factual dispute as to the existence of cause in a *habeas* case, a district court must hold an evidentiary hearing, even if neither party requests it.

Policy reasons fully support remanding this case in order to resolve the factual dispute underlying the district court's conclusion regarding cause. The costs of federal habeas review are quite high when a prisoner's appellate default has prevented him from obtaining adjudication of his constitutional claim in the state's highest court. These costs include reducing the finality of litigation and frustrating the state's power to punish offenders while adhering to constitutional safeguards. *See Carrier,* 477 U.S. at 487, 106 S.Ct. at 2645. Before conducting federal habeas review of a state court conviction, a federal court should resolve relevant factual disputes, including those concerning cause, rather than doing the "best [it can] with whatever scanty materials [are] before [it]." *United States ex rel. Mitchell v. Follette,* 358 F.2d 922, 928 (2d Cir.1966). Sometimes, as in this case, the district court will need to conduct an evidentiary hearing and find certain facts in order to determine whether

a petitioner has established cause by demonstrating that prison officials made compliance with the state procedural rule "impracticable." *See Carrier,* 477 U.S. at 488, 106 S.Ct. at 2646.

## IV

Having concluded that the district court should hold an evidentiary hearing in order to resolve the factual dispute underlying its finding of cause, we express no opinion concerning whether the district court was correct in concluding that Buffalo established cause or prejudice under the cause and prejudice standard. *See id.* at 493–96, 106 S.Ct. at 2648 (discussing the prejudice component); *Frady,* 456 U.S. at 168–75, 102 S.Ct. at 1594–98 (same). We also express no opinion pertaining to whether the district court erred in concluding that Buffalo's defense counsel rendered ineffective assistance of counsel or erred in not holding an evidentiary hearing on the issue of defense counsel's strategy.

REVERSED AND REMANDED.