Argued April 20; affirmed May 16, 1939

# *STATE *v.* POOLE

(90 P. (2d) 472)

---

*Petition for rehearing having been filed on June 3, 1939, and showing having been made that appellant Harry W. Poole died June 7, 1939, the supreme court entered an order September 6, 1939, a part of which reads as follows: "It is now therefore ordered that the motion of respondent to abate any further proceedings on appeal by reason of the death of the appellant be and the same hereby is allowed."

484

In Banc.

*Harry D. Boivin* and *E. E. Driscoll,* both of Klamath Falls, for appellant.

*Hardin C. Blackmer,* District Attorney, and *L. Orth Sisemore,* Deputy District Attorney, both of Klamath Falls, for the State.

BEAN, J. This is a criminal action in which Harry W. Poole was convicted on October 1, 1938, of the crime of statutory rape, committed on the person of one Betty Elinor Snow. The charging part of the indictment is as follows:

"The said Harry W. Poole on the 29th day of July, A. D. 1938, in the said County of Klamath and State of Oregon, then and there being, did then and there unlawfully, wilfully and feloniously carnally know one Betty Elinor Snow, a female child under the age of sixteen years; contrary to the statutes," etc.

The cause was tried to the court and a jury and a verdict of guilty, as charged in the indictment, was rendered. From the resulting judgment and sentence that the defendant be confined for an indeterminate term of eight years in the penitentiary at Salem, Oregon, defendant appealed. Defendant seasonably moved the court for a new trial, which motion was denied by the court.

■ The first assignment of error is that the defendant did not plead to the indictment. This assignment is not borne out by the record, which shows that on August 24, 1938, the defendant and his then attorney appeared in open court. The district attorney read the indictment to the defendant and handed a certified copy thereof to the defendant, whereupon the following proceedings were had:

"The Court: I wonder if you gentlemen have had time to look it over.

Mr. Poole: I haven't seen it at all.

The Court: How long would you want?

Mr. Poole: I don't even know the party. I have to plead 'not guilty' because I don't even know the party.

The Court: The plea will be received and entered. What would you want to do about bail?''

Later the court stated:

"It will be noted in the record that Mr. Poole appeared personally and in person and by his attorney and entered a plea of 'not guilty' to the indictment and bail was reduced from $5,000, to $2,500.''

Although the court indicated that defendant and his counsel could have further time, neither defendant nor his attorney asked or took further time, but defendant voluntarily pleaded "not guilty", which plea was regularly entered. The point is not well taken.

■ The second error complained of is that the court admitted in evidence the birth certificate of "Baby Snow" as state's Exhibit No. 1, over the objection of defendant. When Edwina B. Snow, a witness for the state, and the mother of the prosecutrix, was on the stand, the district attorney offered a certified copy of the birth certificate of "Baby Snow" from the state of California. The witness testified that at the time the birth certificate was filed the child had not then been named, and that the certificate was the certificate of the birth of the child known as Betty Elinor Snow, then sitting in the court room, the certificate showing her birth on March 1, 1923. The birth certificate was introduced under section 9-628, subd. 7, Oregon Code 1930 (amended by chap. 102, Oregon Laws, 1937, but not so as to affect this case), which provides that documents of a sister state may be introduced by the original or a certified copy thereof, identified by the legal keeper, together with the certificate of the secretary of state, or other named officers, that the copy is duly certified by the officer having the legal custody of the original. The certificate of the registrar of vital statis-

tics is to the effect that the copy is a true and correct copy of the original, that the original is on file in her office, and that she is the legal custodian thereof. The certificate of the secretary of state is to the effect that the person signing the certificate was, on the date thereof, the duly appointed, qualified and acting registrar of vital statistics, that the seal affixed to the certificate is the seal of the department of public health, that the signature is genuine and the attestation is in due form and by the proper officer. The certificate of the secretary of state bears the seal of the state of California. The certificate shows the place of birth of ''Baby Snow'' as San Francisco, California, the maiden name of the mother as Edwina Russell, the father's name as Bert Snow, and residence, San Francisco, occupation, upholsterer, and his place of birth as Minnesota. There is attached to the certificate the attending physician's certificate. We think that the certificate with the mother's identification of Betty Elinor Snow was sufficient and that it was properly admitted.

■ The third assignment of error is that the court admitted testimony of the witness Betty Elinor Snow as to statements claimed to have been made by defendant concerning relations with other girls. Over the objection and exception of defendant, the following testimony was introduced:

''Q. Now, during the intercourse was there anything else took place? Did he say anything or—

A. He said he had a girl twelve years old up there in his office; he didn't see why I should put up such a fight.''

An objection was made that the testimony was incompetent. The testimony thus elicited was part of the res gestae, and the whole description of the crime as to what took place at the time of the offense could not be

given without including such statement. As we view the matter the testimony was not offered for the purpose of showing the commission of another crime, but we think she had a right to show that he said "he didn't see why I should put up such a fight." This was a part of the statement and only completed the sentence. It could not be separated and it was all admissible.

■ It is a well-established rule that in the prosecution for the crime of rape the state is not permitted to introduce evidence tending to prove that the defendant committed, or attempted to commit, a like offense upon a female other than the prosecutrix: *State v. Putney*, 110 Or. 634, 641, 224 P. 279; 1 Wharton Crim. Ev. (11th Ed.) 487. The general rule has not been violated in the case at bar. There is no testimony in the case that the defendant ever committed or attempted to commit rape upon the body of any other person than that of the prosecuting witness.

■ All circumstances, facts and declarations which grow out of the main act charged in the indictment are contemporaneous with it and serve to illustrate its character. We read in Underhill's Crim. Ev. (3rd Ed.) 212, § 160, as follows:

"The expression, res gestae, as applied to a crime, means the complete criminal transaction from its beginning or starting point in the act of the accused until the end is reached."

The testimony objected to was a part of the res gestae: *State v. Bebb*, 125 Iowa 494, 101 N. W. 189. This holding does not conflict with the decisions of this court. The syllabus in *People v. Davis*, 6 Cal. App. 229, 91 P. 810, reads:

"Upon a prosecution for an attempt to commit rape upon a girl under the age of consent, it was not error to permit the prosecuting witness to testify to state-

ments made by the defendant as to his relations with other young girls a few minutes before the performance of the criminal act."

This statement was admissible. There was no error in admitting such testimony.

Assignment of error No. 4 is that the court erred in admitting the testimony of the witness Betty Elinor Snow concerning some of the statements claimed to have been made by defendant, wherein the defendant is alleged to have requested the prosecuting witness, Betty Elinor Snow, to have unnatural relations with him. The district attorney inquired of this witness: "Anything else transpire at that time, beginning from the time you began to have intercourse?" Upon a request for a repetition of the question, the testimony continued:

"Q. Anything else in relation to his act of sexual intercourse with you? Did he say anything else to you or request you to do anything?

A. What?

Q. What did he request you to do, Betty? Did he make a request orally to you?

A. Yes.

Q. Can you say what he said to you?

A. Yes.

Q. Will you say it. Repeat what he said to you, will you?"

Whereupon the witness answered that he asked her to have unnatural relations with him. After the answer counsel for the defendant objected, which objection was overruled.

What we have already said in regard to the res gestae applies in part to this testimony. It appears to have been given at the same time and at the place of the commission of the crime and was a statement of

what was taking place at the scene of and the time of the commission of the crime: *State v. Putney,* supra.

It is apparent that the matters objected to are purported statements of the defendant. The defendant quotes from 10 R. C. L. 978, as follows:

"The general rule is that a declaration sought to be proved must have been contemporaneous with the event established as the principal act."

But this sentence continues:

"but in order to constitute declarations a part of the res gestae, it is not necessary that they shall have been precisely coincident in point of time with the principal fact."

If they sprang out of the principal fact, tending to establish it, were voluntary and spontaneous and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous and are admissible in evidence. The statements objected to sprang out of the principal fact, tended to explain it and were voluntary and spontaneous, and it cannot be suggested that they were not near the principal fact in point of time. This objection might be valid if the evidence purported to be evidence of acts performed, but the evidence is not of acts but of statements. The statements of solicitation on the part of defendant were certainly a part of the transaction in that they tended to show the mental attitude of the defendant and the relationship of the parties. It is apparent that the statement here in question tends to explain the character and quality of the act and is so connected with it as to constitute one transaction.

Defendant cites *Fredenthal v. Brown,* 52 Or. 33, 95 P. 1114; *Coggins v. State,* 20 Ala. App. 378, 102 So. 241. We do not think that these cases are contrary to the rule here announced.

In the case of *State v. Garrand,* 5 Or. 217, we find the following language:

"To make declarations a part of the *res gestae* they must be contemporaneous with the main fact, but in order to be contemporaneous they are not required to be precisely concurrent in time. If the declarations spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as contemporaneous."

It is said in *State v. Putney,* supra: "What constitutes the *res gestae* of a crime depends upon the nature of the crime and the circumstances of its commission."

In 1 Wharton's Criminal Evidence, 755, § 495, we read:

"There are no limits of time within which the res gestae can be arbitrarily confined. These limits vary in fact with each particular case. The acts or declarations are not required to be contemporaneous with the primary fact, but they must be so connected with it as to make the act or declaration and the main fact practically inseparable, or be generated by an excited feeling which extends, without break or let-down, from the moment of the event they illustrate. In other words, if the acts or declarations sprang out of the principal transaction, tend to explain it, were voluntary and spontaneous, and were made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous in point of time, and are admissible."

The evidence offered and received was evidence of a statement made by defendant at the time of the commission of the crime charged and not of the actual occurrence of the act to which the statement referred. The testimony was admissible and no error was committed in allowing it to be introduced.

In the fifth assignment of error the defendant claims that the trial court erred in allowing the state to attempt to impeach the witness, A. A. Soule. In the brief it is urged that this evidence was improperly admitted for the reason that it was on a collateral issue and no proper foundation was laid. No such objection was made at the trial. In fact no reason was given for the objection: *State v. Johnston*, 143 Or. 395, 22 P. (2d) 879. Therefore, there is nothing before this court to consider at this time, but if the objection had been properly made the evidence was clearly admissible.

The record shows that the prosecutrix was taken by her mother to the witness, Dr. A. A. Soule, for examination to determine if she, the prosecutrix, had been attacked. The witness, Dr. Soule, testified:

"There wasn't any medical evidence or symptoms that I could go by to show she had intercourse or hadn't had intercourse."

The question of whether the prosecutrix had had intercourse was not collateral to the issues of the case. This being the testimony of the witness, it was competent to show that prior contradictory statements had been made by him. When Dr. Soule was on the stand he was asked the question and answered as follows:

"Q. Doctor, on the day that this examination was made by you, in your office subsequent to your examination, in the presence of Miss Betty Snow, did you or did you not state to the mother of Betty Snow, Mrs. Edwina Snow, that from your examination you didn't think that the girl had lied to her. Did you or did you not make that statement?

A. Make the statement that I thought the girl hadn't lied to the mother?

Q. Yes.

A. I can't recall vividly that I made that statement."

Thereafter during the direct examination of Mrs. Edwina B. Snow, called by the state as a rebuttal witness, the district attorney asked the following questions and the following answers were given:

"Q. Did you hear the testimony of Dr. Soule?

A. Yes, sir.

Q. Will you tell the jury what he told you at the time he finished the examination of your daughter, Betty?

Mr. Boivin: Object to that.

The Court: Did he testify as to what he told Mrs. Snow?

Mr. Blackmer: His statement was he didn't have any vivid recollection.

The Court: As to what?

Mr. Blackmer: The question was as to whether her daughter hadn't lied to her and he answered, he had no vivid recollection."

Whereupon counsel for defendant asked that the question and answer given by the district attorney be stricken from the record. On the objection being overruled, to which an exception was reserved, the witness was asked: "Was that substantially what he said to you?" and she answered, "Yes, that is what he said."

We read in 3 Wharton's Crim. Evi., (11th Ed.) 2236, § 1355, as follows:

"A witness called by the opposing party can be impeached by proving that on a former occasion he made a statement inconsistent with his statement made on trial, provided such statement is material to the issue, * * *. The right of impeachment is not limited to matters arising in chief, but extends to those originating in cross-examination; and where such matters are material, impeachment is permissible."

The impeaching question was asked on cross-examination and the witness stated that he did not recall "vividly" of making the statement.

Again, we read in 3 Wharton's Crim. Evi. (11th Ed.), 2243, § 1359:

"Impeaching testimony can be offered when, but only when, the witness denies, directly or qualifiedly, that he made the statement, or when he neither directly admits nor denies the making of such statement, but states that he does not remember whether or not he made it."

■ The objection that no foundation was laid is unavailing. The witness was asked whether or not he made a certain statement, at a place and time certain, and in the presence of certain named parties. This is sufficient foundation to allow the introduction of evidence of a contradictory statement.

■ Assignment of error No. 6 is that the court erred in refusing to give defendant's requested instruction No. 5 concerning an alibi, as follows:

"There has been testimony tending to show an alibi on the part of the defendant and that it was impossible for him to have committed the act under the circumstances and at the time prosecutrix testified it was committed. In view of this, the time of the commission of the offense is important and if you are not satisfied beyond a reasonable doubt that the offense was committed under the circumstances and at the time the state contends, then and in that event it will be your duty to acquit the defendant."

and in giving the instruction in effect as follows:

"The jury is instructed that while the indictment upon which the defendant is being tried recites the date of the offense to be July 29, 1938, and you are instructed that it is not essential or is the state required to prove the alleged crime occurred on that particular date. It shall be sufficient if the state proves the alleged crime to have been committed before the indictment was returned, and within the period of the statute of limitations, which in this case would be three years. * * *"

In the first part of this assignment of error the defendant contends that it was error for the court to refuse to give defendant's requested instruction No. 5 concerning an alibi. Webster's New International Dictionary, (2d Ed.) Unabridged, defines "alibi" as "The plea of having been, at the alleged time of the commission of an act, elsewhere than at the alleged place of commission." 1 Wharton's Criminal Law, (12th Ed.) 505, § 381, says: "The defense of alibi—i. e., 'elsewhere,' or presence in another place than that described at the time the alleged offense was committed, * * *." See also 8 R. C. L. 124, § 98, where, in discussing the word "alibi", it is said: "because he was not at the scene of the crime at the time of its commission."

From these definitions it will be seen that the defense of alibi, while permissible, is available only where there is some proof that the accused is absent from the scene of the alleged crime at the time of its commission.

The prosecutrix testified that she went to see the defendant Poole between four and five o'clock in the afternoon; on cross-examination she places the time of the commission of the offense between about four and about five o'clock in the afternoon; again, the prosecutrix places the time of her visit to Poole's office between the hours of four and five o'clock, and again she places the time of meeting the defendant on July 29, 1938, at four o'clock. The testimony of defendant indicates that he was at his office practically all of the time between the hours of four and five o'clock on July 29, 1938. Defendant testified as follows:

"Q. Now, Mr. Poole, coming to the 29th, have you any positive recollection as to whether or not you were in your office between the hours of four and five o'clock in the afternoon of that date?

A. I think I was there until about 4.30 or a quarter of five. I am not positive about it, but I think I was. I always get the checks signed up before Miss Berglund leaves; she takes the mail to the post office and it has to be there before 5.30.

Q. Do you know whether or not Miss Berglund or Mrs. Poole were in the office at about the hour of 4.30 or 5.00 o'clock when you left, if you did so leave?

A. I know they were up until the time I left. That is definite, and I came back a few minutes later. As I recall I went down to the theatre about ten minutes. I think I returned about ten minutes after five. I think Mrs. Poole had left then but Miss Berglund hadn't, as I remember.''

This testimony shows that the defendant was at his office between four and five o'clock of the day mentioned, except for about 15 minutes. It does not tend to show that he was not at the place of the commission of the crime at the time it is alleged to have been committed. He seems to endeavor to show that Mrs. Poole and Miss Berglund were there also. The direction to the jury in regard to their testimony is included in the court's instruction, as follows:

''The surrounding circumstances must be such as to corroborate the testimony of the prosecutrix. If, in your judgment, the surrounding circumstances in this case do not tend to corroborate the testimony of the prosecutrix or are inconsistent with any fact other than that of the innocence of the accused, then in that event, it will be your duty to find the defendant not guilty.''

The jury was practically instructed that if they believed from the testimony of Mrs. Rose Poole and Dorothy Berglund that the surrounding circumstances made the commission of the offense as related by the prosecutrix improbable, or not inconsistent with defendant's innocence, then he should be acquitted. The

jury, in rendering its verdict of guilty must have been of the opinion that Mrs. Poole and Dorothy Berglund were not there at the time of the assault. They both had the interest of employees. The jury evidently believed it was simply a case of their referring to another time or date, and did not necessarily believe they testified falsely.

We find no testimony in the record upon which to base an alibi.

The facts in the case of *State v. Coss,* 53 Or. 462, 101 P. 193, cited by defendant, are quite different and distinct from those of the instant case. In the Coss case the prosecutrix accused the defendant of several improper advances on different dates. This court held in that case, in substance, that the date of the commission of the crime was material because of other undue familiarities and advances. There was a necessity for instructions as to the particular date because it was incumbent for the jurors to all agree upon his guilt or innocence for one particular act. The defendant cited only part of the court's ruling in this case. Immediately following that excerpt, we find:

"While the prosecution is not required or compelled to prove that the crime was committed on the date alleged in the indictment, it is required to prove some particular act constituting the crime and to rely upon that for a conviction. If it selects some particular act, and the defendant meets the charge with evidence tending to show that it was impossible for him to have committed such act, the jury ought not to be permitted to find the defendant guilty, because it may believe, from the testimony, that he did, in fact, commit some other criminal act of a similar nature to that charged."

In the instant case there was no cause for selection of a particular act from among several wrongful acts,

because there was evidence of only one wrongful act. In the Coss case there were several acts from which to select, while in the present case there was only one. This court then went on to say:

"The indictment charged but one act, and while it was not necessary for the state to prove that it was committed on the date stated in the indictment, it was important that all the jurors should agree upon the same particular act, and that the instructions be so framed as to confine their inquiry to that point."

In the instant case this requirement is amply met when the court instructed the jury as follows:

"The jury is instructed that in this particular case the exact date is immaterial and it may decide that matter for itself upon the happening of the particular event as related by the testimony."

The court's instruction confined the jury in its deliberations to the particular event as related by the testimony and, there being only one offense, the jury was necessarily confined to that one offense in determining the defendant's guilt or innocence.

■■■■ The defendant complains of the explanation given by the court of the following instruction No. VI, which he requested:

"You are instructed that the consent of the prosecutrix to the act, if you find it was committed and that she did submit to it, does not relieve the defendant of the responsibility of his act. You are however, in view of the testimony of the prosecutrix that the act was committed by force and violence, to consider the question of consent, if you find she did give consent to the act, for the purpose of affecting her creditability (credibility) as a witness and for its bearing upon the fact as to whether or not a crime was committed."

The explanation which is complained of reads:

"I might discuss that a little bit more. As jurors in this case you are not particularly concerned as to whether or not it was a matter of violence. That is not of vital importance. The only question you have to ascertain is whether or not the defendant, Harry W. Poole, had sexual intercourse with the prosecutrix in Klamath County, State of Oregon, and whether or not she was under the age of sixteen."

The above quoted instruction was given verbatim as requested by defendant, and the instruction now complained of was only given as a matter of explanation of that given at defendant's request. This instruction fairly submitted the matter to the jury. In any event no proper exception was taken to the giving of such instruction. The only exception we find reserved to the giving of the above quoted instruction No. VI and its explanation is as follows: "And the defendant excepts to all of the instructions that were given by the court except defendant's requested instruction No. I, No. II, No. III, No. IV and No. VI."

This court in the case of *State v. Johnston,* supra, said:

"It should be unnecessary to repeat that it is only error properly excepted to that will be reviewed upon appeal. It is the duty of counsel, when excepting to instructions given, to point out to the court in what respect the instruction excepted to is erroneous."

There being no proper exceptions as to the instructions given, we are precluded from considering them upon this appeal. Omnibus exceptions are looked upon with disfavor, particularly when no reason is given to the trial court for such exceptions, because failure to point out the error, if any exists, gives the court no

opportunity to correct such error before the verdict is returned.

■ At least some of the instructions given by the court, to which the defendant excepted, were good, bringing this case under the rule of the case of *Hahn v. Mackay*, 63 Or. 100, 126 P. 12, 991. See also *Brosnan v. Boggs*, 101 Or. 472, 198 P. 890. Inasmuch as there was no testimony tending to prove an alibi and as there was only one offense charged, and consequently the jury was confined in its deliberations to the happening of that one particular act, it follows that the exact date of the commission of the offense is immaterial, provided it comes within the statutory period of limitation.

■ Defendant claims that it was error for the court to give the following instruction:

"You are instructed that extent of penetration is immaterial so long as there is such penetration as the court has just designated because the injury was primarily to the morals or reputation of the child which would be as great if there is a very slight penetration not passing beyond the outer labia as there would be with a penetration extending beyond that point to the hymen. * * *

"While the jury may consider the fact that the testimony in this case has disclosed that the hymen has not been ruptured or broken, you are instructed that the penetration as proven by law need not be to such an extent as to cause a rupture or breaking of the hymen."

Defendant bases his objection on the grounds that there was no evidence to support the instruction, that it was argumentative and upon a matter which was not in issue in the case. No such reason was given to the court. It is not necessary to consider this exception. However, if the exception had been properly taken, the instruction, we think, was a good instruction, and there

was competent testimony that there had been penetration: *State v. Wisdom,* 122 Or. 148, 257 P. 826. There was testimony that the hymen had not been broken. Hence, it was proper for the court to instruct on the well recognized principle of law that any penetration, however slight, constitutes the offense charged: *State v. Chase,* 106 Or. 263, 211 P. 920. Certainly the question as to whether or not there had been penetration was in issue despite defendant's claim to the contrary. The extent of penetration required to constitute the crime was a matter upon which the jury was entitled to be instructed. The instruction in question did that and nothing else; therefore it was properly given. We approve the instruction as given by the court.

■ The ninth assignment is that the court erred in giving the following instruction on the law of reasonable doubt:

"Moral certainty only is required or that degree of proof that brings conviction to an unprejudiced mind. If conscious of uncertainty of the guilt of the defendant you would have no reasonable doubt, but if conscious of the guilt of the defendant you would have a reasonable doubt."

While no proper exception was taken to this instruction, after reading the substance of all the instructions of the court, we believe that the jury was properly and fairly instructed on the question of reasonable doubt. This instruction does not stand alone, the court having previously instructed the jury at considerable length on the law of reasonable doubt, and having followed the alleged erroneous instruction with proper instructions on the subject. We submit that any error, if committed, is harmless and it did not in any manner jeopardize the rights of the defendant. Had this matter been called to the court's attention at the time the exceptions were

taken, the court could have had the reporter's notes read back to him and any error could have been immediately corrected.

After a careful examination of the record, we find no reversible error therein and believe that the defendant had a fair trial.

The judgment of the circuit court is affirmed.

LUSK, J., not sitting.