Argued and submitted January 30, 1991, judgment vacated; remanded with instructions March 11, State's petition for reconsideration and Wood's petition for reconsideration denied May 27, Wood's supplemental petition for reconsideration denied June 15, all petitions for review denied June 23, 1992 (313 Or 355)

# STATE OF OREGON,
*Respondent,*

*v.*

# HECTOR CLYDE WOOD,
*Appellant.*

(34151; CA A61909)

827 P2d 924

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Hector Clyde Wood, *pro se*, Salem, filed a supplemental brief and a reply brief.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

DEITS, J.

## DEITS, J.

Defendant seeks reversal of his conviction for rape in the first degree. ORS 163.375. He argues that the trial court erred by admitting statements that he made to an investigating officer, by denying his request for discovery of a file compiled by the Children's Services Division (CSD) and by denying his motion to admit evidence of the victim's prior sexual conduct. We vacate the judgment and remand for an *in camera* inspection of portions of the CSD file.

On June 5, 1978, Detective Sergeant Robson, of the Benton County Sheriff's Office, contacted defendant at his residence. Robson testified that, during their exchange on defendant's front porch, Robson introduced himself and informed defendant of allegations that he had raped and sexually abused his nine-year old daughter. When Robson first asked him if the allegations were true, defendant did not respond. Robson repeated the question, and defendant asked where his daughter was. Robson told him that she had been taken into protective custody and asked him once or twice again if the allegations were true. At that point, according to Robson, defendant admitted that the allegations "probably were" true. Robson then advised defendant that there was a possibility that criminal charges would be brought against him and that he had the right to remain silent and to talk with an attorney.[1] Robson asked again about the allegations, and defendant stated that he did not want to answer questions until he had spoken with an attorney. Robson then stopped questioning defendant and left.

Defendant was tried in January, 1979, and was convicted of rape in the first degree. When he was released on his own recognizance pending sentencing, he fled the jurisdiction. The court ordered that a warrant be issued for his arrest but, "as a result of apparent oversight," no warrant was issued until November, 1983. In 1984, a federal warrant for unlawful flight was also issued. Defendant was arrested on

---

[1] Robson testified that he read this to defendant:

"You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present when you — while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one."

the warrants in 1987, in New Mexico. He refused to waive extradition and was released on $5,000 bail, pending issuance of a governor's warrant for his extradition. He again fled. In April, 1989, he was arrested in California on the 1983 warrant. On August 1, 1989, he was sentenced on the 1979 rape conviction to a term of 10 years in prison, with a mandatory minimum of 38 months.

Defendant assigns error to the trial court's denial of his motion to suppress the admissions that he made to Robson, asserting that they were elicited in violation of his rights under Article I, section 12, of the Oregon Constitution and the Fifth Amendment. He urges us to decide whether he had been advised of his rights on the basis of current law, rather than under the law as it existed when he was tried in 1979, presumably because present case law is more favorable to him. Because we conclude that the trial court's denial of the motion to suppress was proper under past or present case law, it is unnecessary to address defendant's contention that we must apply current law.

■    Defendant argues that the circumstances surrounding the questioning on his porch fall within the principle that *Miranda*-like warnings "may be required in circumstances that; although they do not rise to the level of full custody, create a 'setting which judges would and officers should recognize to be "compelling." ' " *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (quoting *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987)). However, we conclude that the circumstances were not compelling. Robson spoke with defendant on the porch at his own home. He identified himself and told defendant the purpose of his visit. Defendant's wife was in the house. Robson testified that defendant was not in custody during their conversation and that he never told him that he was under arrest or made any threats or promises to him. Defendant offers no evidence, and the record discloses none, that indicates that he was not free to refuse to speak to Robson and to remain in his home. Although defendant was being questioned because the police suspected that he had abused his daughter,

"the fact that police question a person as a suspect in a crime 'does not inherently create a "compelling" setting for Oregon constitutional purposes.' " *State v. Carlson*, 311 Or 201,

205, 808 P2d 1002 (1991) (quoting *State v. Smith, supra,* 310 Or at 11).

When it appeared from defendant's answers that the allegations made by his daughter might be true, Robson immediately advised him of his rights. After defendant told Robson that he did not wish to answer any more questions until he had spoken with a lawyer, Robson stopped his questioning. Defendant's participation in the discussion was voluntary, and the circumstances were not compelling.

■　　　We reach the same result under federal constitutional analysis, which requires warnings when a person is subject to "custodial interrogation." *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). Defendant was not under arrest; he was questioned at his home and was free to refuse to answer questions. He was not subject to custodial interrogation under federal standards. *See Berkemer v. McCarty,* 468 US 420, 441, 104 S Ct 3138, 82 L Ed 2d 317 (1984); *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977).

Finally, on the suppression issue, defendant argues that, even under 1979 case law, the evidence should be suppressed, because his admissions were made while he was in custody and because they were coerced. For the reasons discussed above, we conclude that he was not in custody and that his statements were not coerced.

■ ■　　　Defendant also assigns error to the trial court's denial of his motion to strike the testimony of Weiman, a CSD worker, and to the denial of his "motion for discovery of exculpatory material within the CSD file." During testimony in the state's case, Weiman referred to reports that she had made to her agency after meeting with the victim. Defendant's counsel immediately told the court that the discovery statutes required that he be given Weiman's reports:

> "What I am trying to do, I believe that these reports are certainly within the scope of the discovery statute. The District Attorney's Office is required to furnish those to counsel. I don't believe that, in a matter of a felony, there need be a request for that. I would represent to the court that she — I have never seen any of these reports. I didn't know they existed."

The court responded:

> "She is talking about her agency reports, which as I understand the law, are confidential records. And unless she has disclosed those to the District Attorney or to the police, then you aren't entitled to them, and they aren't entitled to them."

Defense counsel then moved to strike Weiman's testimony, and the court denied the motion.

Defendant argues that he was entitled to disclosure of the file under the discovery provisions of ORS 135.815:

> "Except as otherwise provided in ORS 135.855 and 135.873, the district attorney *shall disclose* to the defendant the following material and information within the possession or control of the district attorney:
>
> "(1) The names and addresses of persons whom the district attorney intends to call as witnesses at any state of the trial, *together with their relevant written or recorded statements or memoranda of any oral statements of such persons.*" (Emphasis supplied.)

We conclude that, under ORS 135.815, the prosecutor was required to disclose the portion of the CSD file containing written reports by Weiman, because the state intended to call her as a witness. Although CSD files are confidential under ORS 418.770, that confidentiality is not absolute. As explained in *State v. Warren*, 304 Or 428, 432, 746 P2d 711 (1987):

> "By statute confidentiality of CSD files is not absolute. ORS 418.770 provides that CSD records are 'not accessible for public inspection.' Nonetheless, disclosure is mandatory in a number of circumstances, ORS 418.770(1), and permissive in others, ORS 418.770(2). CSD must disclose information from its files to '[a]ny law enforcement agency * * * for the purpose of subsequent investigation of child abuse.' ORS 418.770(1)(a); *see also* OAR 412-01-160. Further, by rule CSD must disclose its files to the district attorney. OAR 412-01-145. Law enforcement agencies and physicians to whom disclosures are made are obligated to keep the information confidential. ORS 418.770(3)." (Footnote omitted.)

Regardless of whether the prosecutor has physical possession of them, portions of CSD files pertinent to an

investigation are presumed to be in the prosecutor's possession or control and must be made available to the defendant. *State v. Warren, supra,* 304 Or at 433; *State v. Johns,* 44 Or App 421, 426, 606 P2d 640, *rev den* 289 Or 1 (1980). The portions of the file that include Weiman's reports were pertinent to the criminal investigation and, therefore, defendant was entitled to discovery of them.

■    During Weiman's testimony, defendant also became aware that the CSD file also contained a medical report made by a physician, Younger, who had examined the victim. The state did not intend to call Younger as a witness. However, it concedes that the victim was to be called as a witness, and the report in CSD's file contains memoranda of oral statements that she made. Therefore, defendant was also entitled to discovery of those portions of the medical report.

■    Although the state failed to comply with the discovery statutes, reversal is required only if defendant was prejudiced by not having the witness' statements in the CSD file. *State v. Gallup,* 108 Or App 508, 816 P2d 669 (1991). We vacate the judgment and remand for an *in camera* inspection of the undisclosed material. *See State v. Graville,* 304 Or 424, 427, 746 P2d 715 (1987); *State v. Warren, supra,* 304 Or at 435. If the trial court determines that defendant has been prejudiced by not having the discoverable statements, the court shall order a new trial.[2]

■    Defendant also assigns error to the denial of his motions to reopen the case, grant a continuance or grant a new trial so that he could review the medical report and call Younger to testify.[3] He argues that he was unfairly surprised by the discovery, during trial, that Younger had examined the victim and had given a report of that examination to CSD. Defendant was not aware that Younger had examined the victim and had filed the report until he called Weiman as an adverse witness during his defense. However, he did not inform the court at that time that he wanted to review the

---

[2] Because disclosure was compelled under the discovery statute, we do not address defendant's constitutional arguments.

[3] The state offered to stipulate to some of the facts contained in the medical report, and the parties did stipulate to the fact that the report indicated that Younger . found the victim's hymen intact.

report nor did he indicate that he wanted to call Younger as a witness or ask for a continuance. Instead, he finished examining Weiman, two more witnesses were called and both sides then rested. After that, defendant moved to reopen the case for a continuance or for a new trial. The trial court did not abuse its discretion by denying those motions.[4]

■ We will consider defendant's remaining arguments, because the trial court may determine that no new trial is necessary or the issues might be raised if there is a new trial. Defendant argues that the court erred in denying his motion to introduce evidence of the victim's "prior sexual experiences" in order to prove her knowledge of sexual acts, to impeach her credibility and to show a motive for her to make false accusations. Defendant sought to introduce evidence that the victim had performed fellatio on a 10-year-old boy in Ohio approximately 5 years before defendant's trial and had also once accused a man, other than defendant, of sexually assaulting her. Defendant also sought to present evidence that the victim had been exposed to other sources of knowledge about sexual matters.

The pertinent statute is *former* ORS 163.475, which provided, in part:

> "(4) If a defendant wishes to elicit evidence or testimony concerning previous sexual conduct of the complainant, the defendant must, prior to the offering of such evidence or making reference thereto, request a hearing to be held to determine whether the evidence will be admitted. The request for a hearing shall be made prior to the trial unless for good cause shown. * * * If the court finds that the evidence or testimony sought by the defendant regarding the previous sexual conduct of the complainant is relevant for the purpose offered and is not otherwise inadmissible, the court shall issue an order stating what evidence may be introduced by the defendant, and the nature of the questions permitted at trial."

None of the evidence that defendant sought to introduce is relevant to the victim's alleged motive to accuse defendant falsely. Furthermore, the trial court's ruling

---

[4] Defendant also raises constitutional arguments regarding disclosure of the reports. However, because we hold that the statute requires disclosure of the information sought here, it is unnecessary to address those issues.

accommodated defendant's concerns that the victim's testimony would falsely suggest that she did not have independent knowledge of sexual matters at the time when she was abused by defendant:

"[DEFENSE COUNSEL]: Well, my fear is, Your Honor, that if the jury hears a young lady this age testify about these things, they are going to wonder, 'How does she even know about these things?'.

"[THE COURT]: Well, you can ask her.

"[DEFENSE COUNSEL]: All right.

"[THE COURT]: Not precluding your asking her, 'How did you learn this knowledge?' or 'Where did you learn these terms or these things you are saying?' But you cannot ask her about those acts. That's the only ruling of the court."

We conclude that the trial court's ruling was proper.

■ Defendant also assigns error to the trial court's denial of defendant's demurrer and motion to "require the state to elect which incident it intends to proceed upon." The indictment alleged that defendant raped his daughter "between December, 1977, and July, 1978." The victim was unable to identify the date with any greater specificity, and the state was not required to. *See* ORS 135.717; *State v. Milbradt*, 305 Or 621, 631, 756 P2d 620 (1988).

Judgment vacated; remanded for *in camera* inspection of Children's Services Division file; if discoverable evidence is found and defendant was prejudiced by its nondisclosure, court shall order a new trial; otherwise, it shall reinstate the judgment.