**Hector Clyde WOOD, Petitioner–Appellant,**

v.

**Frank HALL, Director, Oregon Department of Corrections, Respondent–Appellee.**

No. 96–35868.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1997.

Decided Nov. 19, 1997.

Steven T. Wax, Federal Public Defender, Portland, OR, for the petitioner-appellant.

Janet A. Klapstein, Deputy Attorney General, Salem, OR, for the respondent-appellee.

Before: GOODWIN, REINHARDT and RYMER, Circuit Judges.

GOODWIN, Circuit Judge:

Hector Clyde Wood petitions for a writ of habeas corpus, arguing that the district court erred in holding that his claims were procedurally defaulted and that he failed to show cause for the default. The Oregon Court of Appeals had dismissed Wood's direct appeal under Oregon's fugitive disentitlement doctrine, which denies litigants who have fled the jurisdiction the right to pursue their claims in the state's courts.

We review de novo the denial of a petition for a writ of habeas corpus. *See Johnson v. Zenon,* 88 F.3d 828, 828 (9th Cir.1996). We affirm the district court's decision and deny the writ.

## I. FACTS AND PROCEDURAL HISTORY

Wood was indicted for first-degree rape on the basis of allegations that he had engaged in sexual intercourse with his nine-year-old daughter. During the state's presentation of evidence, Wood's counsel learned that a Children's Services Division (CSD) caseworker had made written reports after meeting with the victim and had placed them in the CSD file. Wood's counsel moved to strike the caseworker's testimony and moved to inspect the file. Concluding that the CSD file was

confidential, the trial court denied both motions.

Wood's counsel later called the caseworker as a hostile witness. That testimony revealed for the first time that the victim had been examined by a doctor shortly after the last alleged assault and that the doctor's report was contained in the CSD file. Prior to closing argument, the prosecutor agreed to stipulate that, if called as a witness, the doctor would testify that the victim's hymen was intact at the time of his examination. Wood's counsel refused to agree to a stipulation until he had read the doctor's report.

The government then turned over the report, which stated that the physical examination of the victim was "normal" and revealed "no evidence of previous sexual abuse." The report also stated that the victim told the examining doctor that she "had been used sexually by her father on two occasions" involving "attempted penetration with his penis." The doctor's report also noted that his physical examination "suggest[ed] no previous penetration of the hymen." This report contradicted the victim's testimony at trial that her father had sexually assaulted her on many occasions, and that these assaults often included vaginal penetration. The parties eventually stipulated to the jury that the doctor would have testified that the victim's hymen was intact at the time of his examination.

The jury convicted Wood of first-degree rape on January 11, 1979. While released on his own recognizance pending sentencing, Wood fled the jurisdiction and remained at large until he was arrested in New Mexico in 1987. Wood posted bail, but again fled. He was arrested two years later in California. Wood was returned to Oregon and sentenced to ten years in prison.

While serving his sentence, Wood filed a direct appeal of his conviction. Holding that the government had failed to comply with state discovery statutes by withholding the CSD file, the Oregon Court of Appeals vacated Wood's conviction and remanded to the trial court for in camera review of the CSD file and a determination of whether Wood was prejudiced by the discovery violations. *See State v. Wood,* 112 Or.App. 61, 827 P.2d 924, 928, 930, *review denied,* 313 Or. 355, 833 P.2d 1284 (1992).

On October 15, 1992, two months after Wood had been released on parole, the trial court conducted a hearing regarding the undisclosed evidence. The CSD file was not available for inspection at the time of the hearing, however, because the agency had destroyed it pursuant to routine file retention procedures which required that files be kept for only seven years. The trial court found that Wood was responsible for the loss of the evidence due to his years as a fugitive and his failure to obtain a court order preserving the file. After the parties reconstructed the contents of the file, the court ruled that Wood was not prejudiced by the failure to disclose the caseworker's notes. The court ruled that Wood was prejudiced by the medical report's nondisclosure, but that he had failed to raise or preserve properly his objection to the report by neglecting to move for a mistrial or continuance immediately upon learning of the evidence. The court thus reinstated Wood's conviction.

In early December 1992, Wood went to California to live with another of his daughters without securing permission from his parole officer. On December 15th, he called his parole officer and informed him that he went to California to seek medical treatment for a heart condition. Wood alleged that this treatment was unavailable to him in Oregon and that Oregon had failed to provide him with medical insurance. His parole officer ordered him to return to Oregon within two days. On December 16th, Wood's counsel filed a notice of appeal of Wood's conviction in Wood's absence.

On May 18, 1993, the state filed a motion to dismiss the appeal because Wood was in violation of his parole by being absent from the state. On the same day, Wood underwent quadruple coronary artery bypass surgery in California. On June 21, 1993, Wood filed pro se a response to the state's motion to dismiss, arguing that he had been in regular contact with his attorney, the courts, and the attorney general's office, and that he was in California for legitimate, life-threatening medical reasons. On August 30, 1993, Wood

was arrested in California and returned to Oregon.

According to an affidavit filed by Wood's daughter in these federal habeas proceedings, Wood was granted several passes to visit her in California from December 1993 to April 1994. On April 28, 1994, the Oregon Court of Appeals ruled that Wood had lost his right to pursue his direct appeal due to his "history of absconding from justice" and his absence from the state without permission while on parole.

In January 1995, Wood filed pro se the instant federal habeas petition. The district court appointed counsel, who filed a memorandum in support of the petition. On June 28, 1995, Wood's parole supervision was terminated. Adopting the magistrate judge's report and recommendations, the district court denied Wood's petition. Wood timely appealed.

## II. MOOTNESS

■ Although Wood has been released from custody and his probation has been terminated, we reject the state's contention that his habeas corpus petition is moot. A petition for habeas corpus is not moot if adverse collateral consequences continue to flow from the underlying conviction. *See Chacon v. Wood,* 36 F.3d 1459, 1463 (9th Cir.1994). There is an "irrebuttable" presumption that collateral consequences arise from any criminal conviction. *See id.*[1] Wood's petition thus meets the constitutional requirements of a live controversy and we turn to the state's contention that the procedural default doctrine bars federal review of Wood's claim.

## III. PROCEDURAL DEFAULT

■ "When a state prisoner has defaulted a claim by violating a state procedural rule which would constitute adequate and independent grounds to bar direct review in the

U.S. Supreme Court, he may not raise the claim in federal habeas, absent a showing of cause and prejudice." *Wells v. Maass,* 28 F.3d 1005, 1008 (9th Cir.1994). The state contends that through his unlawful flight from Oregon, Wood forfeited his right to appellate review in the state's courts under Oregon's fugitive disentitlement doctrine and that this constituted an independent and adequate state ground of decision.

■ For a state procedural rule to be "adequate" to foreclose federal review, it must be "strictly or regularly followed." *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (internal quotations omitted). We have explained that "[i]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells,* 28 F.3d at 1010.

■ Wood contends that the Oregon Court of Appeals's refusal to hear his claim did not constitute an adequate state procedural bar because Oregon's fugitive disentitlement doctrine is discretionary. Wood's argument is essentially that because the Oregon courts may dismiss cases in which appellants have absconded, but are not bound to do so,[2] the Oregon state rule is not "strictly or regularly" applied. Under Wood's view, any state doctrine that involves discretion on the part of the state court system may never be an independent and adequate state ground of decision.

We have held, however, that the fact that "the application of a rule requires the exercise of judicial discretion does not render the rule inadequate to support a state decision." *Morales v. Calderon,* 85 F.3d 1387, 1392 (9th Cir.1996); *cert. denied,* —— U.S. ——, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996). In arguing that a discretionary doctrine may never

---

1. In addition to the presumption of collateral consequences, Wood can also show actual collateral consequences because he was convicted of a sex offense that potentially requires him to register with state authorities, *see* Or.Rev.Stat. § 181.595 (1995), and could subject him to sentence enhancement for any future offense.

2. Subsequent to the filing of Wood's appeal, Oregon amended its rules to make disentitlement mandatory upon motion of the opposing party where the appellant absconds from the jurisdiction. *See* Or. R.App. P. 8.05(3).

be an adequate procedural bar, Wood equates discretion with inconsistency. We have expressly rejected this characterization, holding that judicial discretion may be applied consistently when it entails "the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits." *Id.*

As a waiver of a litigant's right to appeal, the fugitive disentitlement doctrine is distinct from most state rules that have been found to be too inconsistently or arbitrarily applied to bar federal habeas review. These cases concern state rules that generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants, *see, e.g., Sullivan v. Little Hunting Park,* 396 U.S. 229, 233–34, 90 S.Ct. 400, 402–03, 24 L.Ed.2d 386 (1969) (rule requiring notice to opposing counsel that a transcript would be tendered used to bar the claims of an African–American family to use community facilities in Virginia); *Williams v. Georgia,* 349 U.S. 375, 382–89, 75 S.Ct. 814, 819–23, 99 L.Ed. 1161 (1955) (Georgia court's discretionary decision to deny motion for new trial to African–American defendant not adequate where the court had granted a new trial on many previous occasions); *Wells,* 28 F.3d at 1008–11 ("occasional practice" of declining to consider claims not raised in the petition for discretionary review insufficient to create an adequate procedural default); and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claims is unfair. *See, e.g., Harmon v. Ryan,* 959 F.2d 1457, 1463 (9th Cir.1992) ("state procedures for seeking discretionary review were in practice sufficiently ill-defined" that noncompliance could not bar federal habeas relief); *Calderon v. United States Dist. Court,* 96 F.3d 1126, 1130–31 (9th Cir.1996) (California's timeliness standards were applied with so much variation that no discernible clear rule existed), *cert. denied,* — U.S. —, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997). Wood fails to show that Oregon has applied its rule selectively or that the doctrine is ambiguous or unsettled in the state.

Two circuits have implicitly held that the fugitive disentitlement doctrine may serve as an independent and adequate state procedural ground. In *Schleeper v. Groose,* 36 F.3d 735 (8th Cir.1994), the Eighth Circuit held that the Missouri Court of Appeals's dismissal of the petitioner's claims under the state's fugitive dismissal rule was "based on its interpretation and application of an independent and adequate state procedural rule." *Id.* at 737. In *Feigley v. Fulcomer,* 833 F.2d 29 (3d Cir.1987), finding that it was undisputed that "an escape is deemed a procedural waiver of the right to seek relief from the Pennsylvania courts," the Third Circuit proceeded to analyze whether the petitioner had shown cause for, and prejudice from, the default. *Id.* at 30–31. Moreover, prior to the Supreme Court's adoption of the cause and prejudice standard for all procedural defaults, several courts had held that state court dismissals based on a litigant's flight from the jurisdiction constituted a "deliberate bypass" of state court remedies that could bar federal habeas relief. *See, e.g., Hall v. Alabama,* 700 F.2d 1333, 1337 (11th Cir.1983); *Strickland v. Hopper,* 571 F.2d 275, 276 (5th Cir.1978).

■ For the first time at oral argument, Wood asserted that Oregon has applied its fugitive disentitlement doctrine arbitrarily and with insufficient regularity. He claims that because the Oregon courts chose not to apply the doctrine to a litigant in one of the five published cases concerning the issue, *see State v. Broom,* 121 Or. 202, 253 P. 1042, 1044 (1927), the rule cannot constitute an adequate procedural bar. Arguments raised for the first time at oral argument are generally waived. *See United Ass'n Local 342, AFL–CIO v. Valley Engineers,* 975 F.2d 611, 614 n. 5 (9th Cir.1992).

■ Even were we to consider Wood's claim, however, he has not presented sufficient evidence that Oregon's application of its fugitive disentitlement doctrine is unprincipled, arbitrary, or standardless. That a rule is discretionary does not alone prevent it from being applied consistently to individuals who are similarly situated. *See Morales,* 85 F.3d at 1392. Nor does the fact that a violation of a rule may infrequently be ex-

cused render the rule inadequate to support the state decision, so long as the state follows clear standards in excusing defaults. *See Amos v. Scott,* 61 F.3d 333, 342 (5th Cir.) ("[W]e do not regard an occasional act of grace by the Texas court in entertaining the merits of a claim that might have been viewed as waived by procedural default to constitute such a failure to strictly or regularly follow the state's ... rule as permits us to disregard that rule generally or where the state court has not done so.") (internal quotations omitted)), *cert. denied,* — U.S. —, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995). Wood has not demonstrated that Oregon has treated similarly situated litigants differently nor has he shown that Oregon applies its rule so infrequently that he was legitimately confused about the effect his departure from the state would have on his right to present an appeal in the state system.

We conclude that Oregon's fugitive disentitlement rule was clear, consistently applied, and well-established at the time Wood fled from the state. Thus, it constitutes an independent and adequate state ground sufficient to support a finding of procedural default.

## IV. CAUSE AND PREJUDICE

■ Despite our conclusion that Wood has procedurally defaulted, we may nevertheless entertain Wood's federal claims if he "demonstrat[es] both cause excusing his procedural default, and actual prejudice resulting from the claim of error." *United States v. Johnson,* 988 F.2d 941, 945 (9th Cir.1993).

The parties do not dispute that Wood has demonstrated sufficient prejudice from his inability to present his federal claims. The state's failure to disclose exculpatory evidence, which refuted key aspects of the testimony of the primary prosecution witness, clearly violated *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), and there is a reasonable probability that this affected the outcome of Wood's trial. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985). Moreover, upon in camera review of the undisclosed medical report, the trial court concluded that defense counsel's failure to get this information before trial

prejudiced Wood. We thus turn to the issue of cause.

In order to demonstrate cause, Wood must "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986)); *see also Bonin v. Calderon,* 77 F.3d 1155, 1158 (9th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 980, 133 L.Ed.2d 899 (1996).

Wood argues that he has shown cause for his procedural default because he left Oregon to seek medical treatment for a life-threatening heart condition that could not be treated in Oregon. Medical reports confirm that Wood's advanced coronary artery disease required quadruple coronary bypass surgery, which he underwent in California in May 1993. Wood claims that Oregon failed to provide him with assistance in securing housing, food, or medical care.

Although Wood's medical problems may be "external to the defense," he chose to leave the state without permission prior to filing his direct appeal. Wood's departure is thus unlike the "objective impediments" that the Supreme Court has found to satisfy the cause requirement. *See Murray,* 477 U.S. at 488, 106 S.Ct. at 2645–46. These include "a showing that the factual or legal basis for a claim was not reasonably available to counsel," that "some interference by [state] officials made compliance impracticable," *id.* (internal quotations and citations omitted), or that the petitioner was afforded constitutionally ineffective assistance of counsel. *See McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470; *see also Buffalo v. Sunn,* 854 F.2d 1158, 1163–66 (9th Cir.1988) (petitioner's "lockdown" by prison officials that prevented him from filing a timely writ of certiorari could provide cause for default).

Wood's cause argument boils down to an assertion that it was unfair for the state to apply its fugitive disentitlement doctrine to him because he had a legitimate excuse for his absence. "[A] state's misapplication of its [fugitive waiver rule] is not cause for de-

fault," however, because "[a] federal court may not re-examine a state court's interpretation and application of state law." *Schleeper,* 36 F.3d at 737. Wood does not assert in his habeas petition that Oregon's application of its disentitlement rule to him violated his federal constitutional rights. In the absence of such a claim, we may not review the fairness of the Oregon court's application of the disentitlement doctrine in light of Wood's health problems and his alleged need to travel outside the state. *See id.; see also Branch v. Turner,* 37 F.3d 371, 374–76 (8th Cir.1994), *rev'd on other grounds sub nom. Goeke v. Branch,* 514 U.S. 115, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995).

We conclude that Wood has not shown cause sufficient to excuse his flight from Oregon and to allow us to entertain his federal habeas claims.

## V.  ACTUAL INNOCENCE

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649. To meet this manifest injustice exception, Wood must demonstrate more than that "a reasonable doubt exists in the light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995). Wood must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327, 115 S.Ct. at 867.

Wood claims that the undisclosed medical report establishes his actual innocence. While it is true that the report contradicted the victim's testimony that her father had penetrated her vaginally on many occasions, the doctor's statements do not necessarily controvert Wood's guilt. Although the report noted that the victim's hymen was intact and that there was "no evidence of previous sexual abuse," Oregon defines "sexual intercourse" for the purposes of its rape laws as "any penetration, however slight." Or.Rev. Stat. § 163.305(7). Oregon courts have held that an intact hymen does not preclude a

finding that penetration sufficient to satisfy this definition has occurred. *See State v. Poole,* 161 Or. 481, 90 P.2d 472, 480 (1939).

Moreover, the jury learned that the victim's hymen was intact when both parties stipulated that fact to the jury. That the jury nevertheless voted to convict suggests that they did not believe an intact hymen disproved Wood's guilt. The doctor's report also noted that the victim "confided that she had been used sexually by her father on two occasions." Thus, while contradicting the number of incidents of abuse that the victim claimed in her trial testimony, the report at least partially supported her contentions at trial that the abuse occurred.

In addition to the testimony of the victim, the evidence advanced at trial against Wood included testimony of the CSD caseworker regarding two interviews she had with the victim and Wood's own statements to a police detective that the allegations " 'probably were' true." *See Wood,* 827 P.2d at 926. In light of all the evidence and the fact that the jury was already aware of the victim's intact hymen at the time it rendered its decision, it is unlikely that "no reasonable juror would have convicted" Wood had the doctor's report been disclosed. *Schlup,* 513 U.S. at 327, 115 S.Ct. at 867.

We do not condone the state's egregious *Brady* violation in this case. But the mere fact that the undisclosed medical report could have supported reasonable doubt does not establish, for purposes of the manifest injustice exception, that no reasonable juror with knowledge of its contents would have convicted Wood. Absent such a showing, Wood's actual innocence claim fails and his procedural default cannot be excused under this exception.

## VI.  CONCLUSION

We hold that Wood procedurally defaulted by fleeing Oregon during his direct appeal and that he has not shown cause for this default. Because we also cannot excuse the default under the manifest injustice exception, we affirm the decision of the district court and deny the writ.

**DENIED.**

REINHARDT, Circuit Judge, dissenting:

In concluding that Hector Wood has forfeited his right to seek relief from a federal court for the state's violation of his right to a fair trial, the majority relies exclusively on his failure to demonstrate cause for what it holds to have been his state procedural default—leaving Oregon without permission from his parole officer. If Wood's leaving the state without permission were in fact the state procedural default, I might be compelled by precedent to join the majority's opinion, despite the fact that Oregon probably convicted him without affording him a fair trial. The procedural default in this case, however, is not simply Wood's leaving the state without permission—it is more complicated than that.

When the Oregon court dismissed Wood's appeal, it did so on the ground of the fugitive disentitlement doctrine, which, as the majority points out, involves a discretionary determination. In deciding to apply this doctrine to Wood, the state court took into account a number of factors, not just his failure to obtain permission before leaving Oregon for his daughter's home in California. The state court did not say that leaving Oregon prior to obtaining permission would in itself be sufficient to warrant the dismissal of Wood's appeal, regardless of the nature of the attendant circumstances or the gravity of the exigencies; instead, it relied on a totality of the circumstances approach.[1] The majority is therefore wrong in concluding that Wood's failure to show cause for not obtaining permission to leave Oregon prior to going to California necessarily precludes him from establishing cause for his procedural default.

Under the state court's analysis, Wood's failure to obtain permission was a necessary but not sufficient factor in the finding that he was disentitled from pursuing an appeal. In most cases involving a procedural default, the application of the default is fairly mechanical—if the defendant failed to take a particular action at a particular time, he defaulted. In such cases, the federal court's cause analysis can be also be quite routine—if the defendant establishes a cognizable excuse for the particular omission, he shows cause. If not, his rights are forfeited. Where the state court looks to the totality of the circumstances, however, and not just to a single omission, the cause analysis likewise must take into account *all* of the relevant circumstances. Accordingly, I believe the majority errs in reducing the cause analysis to a single factor.

Given that we are not free to ignore the relevant facts and circumstances, I would remand to the district court for an evidentiary hearing in order to determine what those facts and circumstances actually are. Notwithstanding the importance of the compelling considerations offered by Wood in this case, no court has determined whether, as appears to be the case, Wood's heart condition was life threatening and whether he had to leave Oregon immediately. No court has determined whether he could have obtained the necessary medical care in Oregon or whether he had no choice but to go to California. No court has ever considered whether he and his daughter constantly kept the Oregon officials apprised of his whereabouts, as they contend they did. Wood submitted affidavits raising genuine issues of fact as to all these points. No court has yet been interested enough to look into them. If all of Wood's contentions are true, he may indeed have cause, once Oregon's reasons for refusing to permit him to appeal are viewed in the proper light.

I am not willing to assume, as my colleagues do, that the Oregon justice system is so harsh and unreasonable that if Wood truly left Oregon to obtain life-saving medical

---

1. Specifically, the state court explained its decision as follows:

In deciding this motion [to dismiss], the court has considered these factors: Appellant left the State of Oregon allegedly because he needed heart surgery and could not get the surgery performed in Oregon; appellant may have kept Oregon authorities informed of his whereabouts; appellant has returned to Oregon and has been taken into custody; appellant has a history of absconding from justice; and appellant left the State of Oregon on this occasion without permission from the supervising authority.

*In light of all these factors,* the court exercises its discretion in favor of determining that appellant is disentitled to pursue this appeal.

treatment that the state refused to provide, and if he constantly kept the state informed of his whereabouts, the state would refuse to allow him to appeal a deprivation of his right to a fair trial simply because he did not obtain permission in advance of his departure. Although the Oregon court's explanation is far from clear, I would afford that court the presumption of having a commitment to fairness and justice than so cruel and arbitrary a ruling would imply. Thus, unlike the majority, I do not think that the only issue before us is whether Wood had cause for failing to obtain advance permission before taking an action that was necessary to save his life.

Because the state court's decision to invoke the fugitive disentitlement doctrine and dismiss Wood's appeal was ultimately based on the totality of the factors, the federal courts should not simply rubber-stamp the state court's forfeiture of his right to have his constitutional claim determined on the merits. Rather, we have an obligation to conduct an evidentiary hearing and make the necessary factual determinations regarding those factors. Accordingly, I would remand to the district court for such a hearing.