**Joseph Murl BENNETT, Petitioner,**

v.

**Glenn MUELLER, Warden, Respondent.**

**No. CV 00–445 CBM(EX).**

United States District Court, C.D. California. Western Division.

April 1, 2005.

Joseph Murl Bennett, San Luis Obispo, CA, pro se.

Gary A. Lieberman, CAAG—Office of Attorney General of California, Los Angeles, CA, for Respondent.

ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE AND OVERRULING PETITIONER'S OBJECTIONS

MARSHALL, Chief Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition, all of the records herein and the attached Revised Report and Recommendation of the United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Revised Report and Recommendation.

■ The Court OVERRULES Petitioner's Objections to the Magistrate Judge's Revised Report and Recommendation. Petitioner objects to the Proposed Judgment, which provides that in addition to the merits of the Petition, Respondent may also address the affirmative defenses, including statute of limitations and laches. Petitioner argues that Respondent has waived these affirmative defenses by failing to raise them in his motion to dismiss, which was the first document Respondent filed in response to Petitioner's Petition. However, a motion to dismiss is not a pleading as defined by Fed.R.Civ.P. 7(a), and therefore is not, in most cases, a responsive pleading as defined by Fed.R.Civ.P. 12. Accordingly, failure to raise an affirmative defense in a motion to dismiss does not mean that the defense has been waived. *See, e.g., United States v. Valdez,* 195 F.3d 544, 548 (9th Cir.1999) ("government only filed a motion to dismiss ... and never filed an answer to the § 2255 motion. We thus deem it premature, at this stage, to hold that the government has waived any possible procedural default defense."); *accord Parker v. United States,* 110 F.3d 678, 682 (9th Cir.1997).

IT IS ORDERED that Respondent's Motion to Dismiss be denied.

IT IS FURTHER ORDERED that, within thirty (30) days of the date of this Order, Respondent shall file an Answer. The Answer shall address the merits of all claims alleged in the Petition. The Answer also may address the affirmative defenses of the statute of limitations and laches. Petitioner may file a Traverse within fifteen (15) days of the date the Answer is filed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Magistrate Judge's Revised Report and Recommendation herein by United States mail on Petitioner and counsel for Respondent.

IT IS SO ORDERED.

REVISED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

EICK, United States Magistrate Judge.

This Revised Report and Recommendation is submitted to the Honorable Consue-

lo B. Marshall, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

In 1986, Petitioner pled guilty to first-degree burglary in Los Angeles Superior Court Case No. A468635. At the time, criminal proceedings were pending against Petitioner in two other cases, Los Angeles County Superior Court Case Nos. A470545 and A470930. In the guilty plea form, signed by Petitioner and his counsel, Petitioner acknowledged: "I understand the court may send me to state prison for a maximum of 6 years." The plea agreement further provided: "If defendant pleads in case # A470545 and # A470930, this case will be 16 months consecutive to any sentence in those cases."

At sentencing, Petitioner attempted to withdraw his guilty plea and enter a plea of not guilty, contending it was his understanding that he was to receive a sixteen month prison term in Case No. A468635 regardless of whether he pleaded guilty in the two other cases. The trial court denied the motion and imposed a prison term of six years. The trial court clarified that the other two cases remained pending; therefore, an open plea remained available if Petitioner wished to plead guilty in the other cases.

Petitioner refused to plead guilty in the other cases. In 1987, in consolidated proceedings, a jury found Petitioner guilty in Case Nos. A470545 and A470930 of two counts of first-degree burglary, forcible rape, forcible oral copulation, forcible sexual penetration with a foreign object, sodomy by force, and assault to commit rape. Petitioner's combined sentence totaled forty-two years and four months, which later was reduced by one year, making his total term forty-one years and four months.

Petitioner did not appeal in Case No. A468635. Instead, twelve years after his conviction, he filed a "Motion for Transcripts" in the Los Angeles County Superior Court, arguing that he was improperly sentenced. The Superior Court denied the motion, finding that his contention "was raised, discussed, ... resolved [and] without merit." Petitioner later filed a habeas corpus petition in the Superior Court, which was denied as showing no grounds for relief. Petitioner next filed a petition with the California Court of Appeal. On May 25, 1999, the Court of Appeal denied the petition without comment or citation to authority. On July 8, 1999, Petitioner filed a habeas corpus petition in the California Supreme Court, in Case No. S080389. On November 23, 1999, the California Supreme Court denied the petition "on the merits and for lack of diligence."

Petitioner filed the present "Petition for Writ of Habeas Corpus by a Person in State Custody" ("Petition") in this Court on January 12, 2000, contending: (1) the trial court erred in failing to admonish Petitioner regarding the nature and effect of the plea agreement, rendering his guilty plea unknowing and involuntary; (2) the trial court abused its discretion in failing reasonably to consider the motion to withdraw his plea; and (3) Petitioner's trial counsel provided ineffective assistance in connection with the plea and the motion to withdraw, and also in failing to appeal.

Respondent filed a Motion to Dismiss on February 4, 2000, arguing that the doctrine of procedural default barred Petitioner's claims. Petitioner filed Opposition to the Motion to Dismiss on February 16, 2000.

On April 4, 2000, the Magistrate Judge issued a Report and Recommendation recommending dismissal of the Petition with

prejudice on the ground of procedural default. On May 30, 2000, the District Court issued an order adopting the Report and Recommendation. The Court entered Judgment on June 5, 2000.

The Ninth Circuit Court of Appeals affirmed in part, reversed in part, and remanded. *See Bennett v. Mueller,* 322 F.3d 573 (9th Cir.), *cert. denied,* 540 U.S. 938, 124 S.Ct. 105, 157 L.Ed.2d 251 (2003) (*"Bennett"*). On October 30, 2003, the mandate of the Court of Appeals was filed and spread on the records of this Court.

On March 15, 2004, the Court ordered supplemental briefing. Because Petitioner failed to file a timely supplemental brief, on April 29, 2004, the Magistrate Judge issued a Report and Recommendation recommending dismissal of the Petition without prejudice for failure to prosecute. On June 2, 2004, Petitioner filed a "Motion for Reconsideration, etc." On June 4, 2004, the Magistrate Judge withdrew the April 29, 2004 Report and Recommendation and again ordered supplemental briefing.

On June 28, 2004, Petitioner filed a Supplemental Brief ("Pet.Supp.Brief"). On September 2, 2004, Respondent filed a Supplemental Brief ("Resp.Supp.Brief"), accompanied by lodged documents. On September 16, 2004, Petitioner filed a Reply. On September 17, 2004, Petitioner filed a Request for Judicial Notice, accompanied by exhibits.

## DISCUSSION

### I. *General Law of Procedural Default*

■ A federal court may be barred from reviewing the merits of a habeas petitioner's claim when the petitioner has defaulted with respect to particular state law procedural requirements. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "For the procedural default rule to apply, however,

the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." *Park v. California,* 202 F.3d 1146, 1151 (9th Cir.), *cert. denied,* 531 U.S. 918, 121 S.Ct. 277, 148 L.Ed.2d 202 (2000) (*quoting Coleman v. Thompson,* 501 U.S. at 729–30, 111 S.Ct. 2546). If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Noltie v. Peterson,* 9 F.3d 802, 804–05 (9th Cir.1993); *see Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. 2546; *Park v. California,* 202 F.3d at 1150.

### II. California's Timeliness Bar

California "has long required that a petitioner in a habeas corpus proceeding justify any substantial delay in seeking relief." *Bennett,* 322 F.3d at 579 (citations omitted). However, in *In re Clark,* 5 Cal.4th 750, 763, 21 Cal.Rptr.2d 509, 517, 855 P.2d 729 (1993) (*"Clark"*), a capital case, the California Supreme Court acknowledged that prior law had not established "clear guidelines" regarding state procedural limitations on habeas corpus petitions. *Clark* recognized that, in 1989, the California Supreme Court adopted new Policies containing express timeliness standards for death penalty cases. *Id.* at 782–83, 21 Cal. Rptr.2d at 532, 855 P.2d 729. *Clark* indicated that the Policies "did not create or modify the timeliness requirements applicable to all habeas corpus petitions," but established, for capital cases, a presumption of timeliness if the petitioner filed a petition within ninety days of the final due date of an appellate reply brief. *See Clark,* 5 Cal.4th at 782–83, 21 Cal.Rptr.2d at 530–31, 855 P.2d 729. *Clark* explained

that "any substantial delay in the filing of a petition after the factual and legal bases for the claim are known or should have been known must be explained and justified." *Id.* at 784, 21 Cal.Rptr.2d at 532, 855 P.2d 729.

Clark also recognized an exception to the timeliness requirement for "petitions which allege facts which, if proven, would establish that a fundamental miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence." *Clark,* 5 Cal.4th at 797, 21 Cal. Rptr.2d at 540, 855 P.2d 729. This "fundamental miscarriage of justice" exception applies when "it can be demonstrated: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which the petitioner was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death; (4) that the petitioner was convicted or sentenced under an invalid statute." *Id.* at 797–98, 21 Cal.Rptr.2d at 540–41, 855 P.2d 729. Thus after *Clark,* a California court's application of the timeliness bar signifies the court's determination that "the petitioner has failed to establish the absence of substantial delay or good cause for the delay, and that none of the four exceptions set out in *Clark* apply." *In re Robbins,* 18 Cal.4th 770, 814 n. 34, 77 Cal.Rptr.2d 153, 182, 959 P.2d 311 (1998) (citations omitted) ("*Robbins* "); *see also LaCrosse v. Kernan,* 244 F.3d 702, 705 (9th Cir.2001).

In *Robbins,* the California Supreme Court ruled that, in applying the *Clark* exceptions, California courts no longer would determine whether an error alleged in a state petition constituted a federal constitutional violation. Rather, California courts would assume that a federal constitutional error was stated, and would apply the exception only upon a determination that the error led to a trial that was so fundamentally unfair that, absent the error, no reasonable judge or jury would have convicted the petitioner. *Robbins,* 18 Cal.4th at 811–12, 77 Cal.Rptr.2d at 181, 959 P.2d 311.

Because *Clark* acknowledged that California timeliness law previously had been uncertain in its application, the Ninth Circuit has held that, prior to *Clark,* California's timeliness bar was not a sufficiently "adequate" state ground for purposes of procedural default. *See Calderon v. U.S. District Court (Bean* ), 96 F.3d 1126, 1130 (9th Cir.1996), *cert. denied,* 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997); *Morales v. Calderon,* 85 F.3d 1387, 1391 (9th Cir.), *cert. denied,* 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996).

### III. *The Court of Appeals' Opinion in Bennett and the Scope of the Mandate*

The Ninth Circuit affirmed this Court's determinations that the denial of Petitioner's habeas petition "for lack of diligence" signified application of the timeliness bar, and that Petitioner's default occurred after *Clark. See Bennett,* 322 F.3d at 579–80 (Petitioner's "substantial, continuing delay after *Clark* issued is a continuous post-*Clark* default"). The Ninth Circuit also agreed that the California Supreme Court's simultaneous rejection of Petitioner's claims on the merits did not undermine that Court's timeliness ruling. *See Bennett,* 322 F.3d at 580 (citing *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). The Ninth Circuit further ruled that California's time-

liness bar constituted an "independent" state ground. *Bennett*, 322 F.3d at 580.

On the issue of the "adequacy" of the bar, the *Bennett* Court established a new burden shifting scheme. The Court announced that the state must plead and prove the affirmative defense of procedural bar, reasoning that "[i]t is the state, not the petitioner, often appearing *pro se*, who has at its hands the records and authorities to prove whether its courts have regularly and consistently applied the procedural bar." *Id.* at 585–86 (citations omitted). The petitioner, however, bears an interim burden to place the defense "in issue":

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.* at 586.

The Ninth Circuit remanded to this Court for a determination whether California's timeliness bar constituted an "adequate" state ground "under the burden of proof principles we have set forth today." *Bennett*, 322 F.3d at 586.

■ Petitioner takes issue with the Ninth Circuit's rulings concerning the construction of the California Supreme Court's order, the time of the default, and the independence of the timeliness bar (*see* Pet. Supp. Brief, pp. 1–9; Reply, pp. 2–4). This Court may not revisit these rulings. "In the Ninth Circuit, when a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Connolly v. Pension Benefit Guaranty Corp.*, 673 F.2d 1110, 1112 (9th Cir.1982) (citations, internal quotations and brackets omitted). The mandate of an appellate court "forecloses the lower court from reconsidering matters determined in the appellate court, [but] leaves to the district court any issue not expressly or impliedly disposed of on appeal." *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986); *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir.), *cert. denied*, 534 U.S. 1040, 122 S.Ct. 615, 151 L.Ed.2d 538 (2001) ("The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case. [citation]."). The opinion of the Court of Appeals forms part of the mandate. *Atlas Scraper and Engineering Co. v. Pursche*, 357 F.2d 296, 298 n. 1 (9th Cir.1966), *cert. denied*, 385 U.S. 1020, 87 S.Ct. 699, 17 L.Ed.2d 559 (1967).

Therefore, the only issue to be determined at this time is whether California's timeliness rule constituted an adequate state ground precluding federal habeas relief.[1]

---

1. The Ninth Circuit's certificate of appealability was limited to the issue whether the California Supreme Court's denial of Petitioner's habeas petition was based upon an independent and adequate state ground. *See Bennett v. Mueller*, Ninth Circuit Case No. 00–56199, docket available on the PACER website at *www.pacer.ca9. uscourts.gov*. The Ninth Circuit did not grant a certificate of appealability as to this Court's determinations that Petitioner failed to show cause and prejudice for any default, and failed to show the existence of any fundamental miscarriage of justice. Hence, those issues are not before this Court

## IV. Principles Governing Analysis of a State Procedural Rule's Adequacy.

█ "[T]o constitute an adequate state ground, the procedural rule must be 'clear, consistently applied, and well-established at the time of petitioner's purported default.'" *Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir.2004) (citations and internal quotations omitted); *see also Poland v. Stewart*, 169 F.3d 573, 585 (9th Cir.1999), *cert. denied*, 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999) ("[a] state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court"; citations omitted).

Imposing the requirement of clear and consistent application of the bar at the time of the petitioner's default ensures that the petitioner was "apprised of its existence." *See Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)); *see also Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir.1997), *cert. denied*, 523 U.S. 1132, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998). "[I]t is grossly unfair—and serves none of the purposes of respect for procedural rules—to forfeit an individual's constitutional claim because he failed to follow a rule that was not firmly established at the time in question." *Calderon v. United States District Court (Bean )*, 96 F.3d at 1129 (citation, internal quotations and footnote omitted). A procedural bar must be "sufficiently clear as to put a petitioner on notice that he must

raise all claims or risk default...." *Bargas v. Burns*, 179 F.3d 1207, 1212 (9th Cir. 1999), *cert. denied*, 529 U.S. 1073, 120 S.Ct. 1686, 146 L.Ed.2d 493 (2000) (citation omitted); *see also Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir.), *cert. denied*, 528 U.S. 886, 120 S.Ct. 205, 145 L.Ed.2d 173 (1999) (purpose of adequacy requirement "is that a petitioner should be on notice of how to present his claims in the state courts if his failure to present them is to bar him from advancing them in a federal court").

In determining the adequacy of the procedural bar, state cases applying the procedural bar after the time of the petitioner's default are irrelevant. *See Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir.2003). Here, the relevant time period of Petitioner's "continuous post-*Clark* default" spans the time period from the July, 1993 *Clark* decision through the November, 1999 California Supreme Court denial of Petitioner's state habeas petition.[2]

Furthermore, *Bennett* instructs that capital cases applying the challenged procedural bar are of limited value in determining the bar's adequacy in noncapital cases. *See Bennett*, 322 F.3d at 583–84 & n. 2 (finding it "inappropriate" for courts addressing adequacy of timeliness bar in a noncapital case to rely on *Deere v. Calderon*, 890 F.Supp. 893 (C.D.Cal.1995), which analyzed the application of California's timeliness bar in a capital case). There are no published California Supreme Court noncapital cases which apply the timeliness

---

on remand. In any event, Petitioner does not now argue the existence of cause and prejudice or a fundamental miscarriage of justice excusing any procedural default.

2. Petitioner appears to argue that, because he filed his "Motion for Transcripts" after the decision in *Robbins*, the issue here is the adequacy of an alleged post-*Robbins* default

(Reply, pp. 2–3). *Robbins* clarified the "independence" of the state's timeliness bar. *See Robbins*, 18 Cal.4th at 814 n. 34, 77 Cal. Rptr.2d at 182, 959 P.2d 311. As discussed above, the issue on remand is the adequacy, not the independence, of Petitioner's "continuous post-*Clark* " default.

bar during the period of Petitioner's "continuous post-*Clark* default."

In determining whether the parties have met their respective burdens, the Court is not limited to reviewing published state court decisions. Rather, it is the "actual practice of the state courts, not merely the precedents contained in their published opinions, that determine the adequacy of procedural bars preventing the assertion of federal rights." *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir.2004); *see also Ford v. Georgia*, 498 U.S. at 423–24, 111 S.Ct. 850 (only a "firmly established and regularly followed state practice" will suffice as a procedural bar). Thus, in *Powell v. Lambert*, the Ninth Circuit held that a federal habeas court may consider both published and unpublished state court decisions in analyzing the adequacy of a procedural bar. *Powell v. Lambert*, 357 F.3d at 879.[3]

■ In determining the adequacy of a procedural bar, the Court may even consider state court minute orders. *See Valerio v. Crawford*, 306 F.3d 742, 776 (9th Cir.2002) (en banc), *cert. denied*, 538 U.S. 994, 123 S.Ct. 1788, 155 L.Ed.2d 695 (2003) (noting that state supreme court exercised discretionary power in capital cases to overlook procedural default "in both published opinions and unpublished orders"); *see also Saffold v. Carey*, 312 F.3d 1031, 1034 (9th Cir.), *cert. denied*, 539 U.S. 927, 123 S.Ct. 2578, 156 L.Ed.2d 604 (2003) (considering California Supreme Court minute orders in deciding whether a state habeas petition was "pending" for purposes of statutory tolling of the limitations period applicable to federal habeas actions set forth in 28 U.S.C. section 2244(d)).[4]

In the present case, Petitioner has managed to cite a number of California Supreme Court minute orders denying habeas petitions in other cases. Respondent

---

**3.** It may seem counterintuitive to consider unpublished, nonprecedential opinions in determining whether the state consistently applies a procedural rule so as to render the petitioner sufficiently "apprised" of the rule's meaning. *Pro se* prisoner petitioners may lack access to unpublished opinions. Moreover, unpublished opinions have no precedential value in California. Citation of an unpublished decision that does not involve the same criminal proceeding generally is forbidden. *See* Cal.Rules of Court, Rule 977(a); *People v. Russo*, 25 Cal.4th 1124, 1133 n. 1, 108 Cal.Rptr.2d 436, 443, 25 P.3d 641 (2001). California court rules which require that *"all* opinions of the state's highest court be published ... assure that all citizens have access to legal precedent...." *Schmier v. Supreme Court of California*, 78 Cal. App.4th 703, 710–12, 93 Cal.Rptr.2d 580, 586–87 (2000), *cert. denied*, 531 U.S. 958, 121 S.Ct. 382, 148 L.Ed.2d 294 (2000) (original emphasis). The California Supreme Court "determines by selective publication the evolution and scope of this state's decisional law." *Id.* at 710, 93 Cal.Rptr.2d at 585. Thus, in California, no court need follow unpublished opinions, and no party confidently

can rely upon unpublished opinions. However, in *Powell v. Lambert*, the Ninth Circuit considered and rejected arguments to exclude nonprecedential decisions from the analysis of a procedural rule's adequacy. *See Powell v. Lambert*, 357 F.3d at 879.

**4.** *Bennett* suggests that analysis of the adequacy issue should be limited to consideration of the "language of the state court opinions." *See Bennett*, 322 F.3d at 584 (citation omitted). In this regard, the *Bennett* Court cited, *inter alia*, *Valerio v. Crawford*. As indicated in text, *Valerio v. Crawford* approved the consideration of "unpublished orders." Thus, state court minute orders may operate as "opinions" of the court for purposes of the present analysis. This is true even though: (1) like unpublished opinions, minute orders have no precedential value in California. *See In re Scott*, 29 Cal.4th 783, 815 n. 5, 129 Cal. Rptr.2d 605, 625, 61 P.3d 402 (2003) ("We caution that our minute orders apply only to the specific case and do not establish binding precedent for other cases. [citations]."); and (2) it is very doubtful whether *pro se* prisoners generally have access to state court minute orders.

urges this Court to consider the pleadings and records in those cases, to determine "the length of the delay, the reasons proffered therefor, and whether an exception to the timeliness rule could have applied" (Resp. Supp. Brief, pp. 6–7; footnote omitted). Respondent suggests that consideration of these "unpublished court records," copies of which Respondent has lodged with the Court, is necessary to understand the meaning of the California Supreme Court's unexplained minute orders (Resp.Supp.Brief, p. 7).

Respondent's suggestion is logical. The vast majority of California Supreme Court denials of habeas petitions on timeliness grounds are rendered not in reasoned opinions but in minute orders.[5] The California Supreme Court's minute orders applying the timeliness bar typically either deny the petition with a citation, or simply indicate that the petitioner failed to show diligence or failed to show cause or justification for substantial delay. The orders do not recite the underlying facts, so one cannot determine from the orders what period of delay the Court deemed "substantial" or what excuses for the delay the Court deemed insufficient. Recourse to lower court opinions (if any) or to the pleadings in the case files would be necessary to ascertain these underlying facts.

In *Deere v. Calderon*, 890 F.Supp. at 899–900, the court reviewed the petitions and responsive pleadings in thirty state capital habeas cases in order to determine whether the California Supreme Court consistently applied its timeliness bar after *Clark*. However, the *Bennett* Court disapproved this approach, stating that a court analyzing the adequacy of a procedural bar should not engage in "a *post hoc* examination of the pleadings and record" in state habeas cases. *Bennett*, 322 F.3d at 583–84 (such an approach is "inconsistent with our precedent"). Therefore, this Court cannot examine the pleadings and records in the state habeas cases of other prisoners in order to decipher the meaning of California Supreme Court minute orders (even though the meaning of these orders otherwise will remain undecipherable).

## V. *Petitioner Has Met His Interim Burden Under Bennett.*[6]

Respondent makes no attempt to satisfy Respondent's ultimate burden to prove the adequacy of the procedural bar at issue here. Rather, Respondent argues that Petitioner has not met his interim burden under *Bennett*, and so "the ultimate burden is not shifted to Respondents [sic]" (Resp.Brief, pp. 21–22). Therefore, the issue before this Court is whether Petitioner has met the interim burden announced in *Bennett*.

### A. *Nature of Petitioner's Interim Burden*

■ As indicated above, *Bennett* requires a habeas petitioner facing the affir-

---

5.  Indeed, between the date of *Clark* and the California Supreme Court's denial of Petitioner's petition on November 23, 1999, the California Supreme Court issued only five published decisions discussing the timeliness bar, all in capital cases: *In re Sanders*, 21 Cal.4th 697, 701 & n. 1, 87 Cal.Rptr.2d 899, 902, 981 P.2d 1038 (Aug. 26, 1999); *In re Hamilton*, 20 Cal.4th 273, 283 n. 5, 84 Cal.Rptr.2d 403, 408, 975 P.2d 600 (1999); *In re Gay*, 19 Cal.4th 771, 779 n. 3, 80 Cal.Rptr.2d 765, 798–768, 968 P.2d 476 (1998); *In re Gallego*, 18 Cal.4th 825, 77 Cal.Rptr.2d 132, 959 P.2d 290 (1998); and *In re Robbins*, 18 Cal.4th 770, 812 n. 32, 77 Cal.Rptr.2d 153, 959 P.2d 311 (1998).

6.  Contrary to Petitioner's assertion, *see* Reply, p. 17, the Ninth Circuit did not "conclusively determine" Petitioner had met his burden, but remanded to this Court for determination of whether an adequate procedural bar existed "under the burden of proof principles we have set forth today." *Bennett*, 322 F.3d at 586.

mative defense of procedural default to put the defense "in issue" by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. The *Bennett* Court adopted the burden scheme established by the Tenth Circuit in *Hooks v. Ward*, 184 F.3d 1206 (10th Cir.1999):

> Once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner. This must be done, at a minimum, by specific factual allegations by the petitioner as to the adequacy of the state procedure. The scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner.

*Hooks v. Ward*, 184 F.3d at 1217, quoted in *Bennett*, 322 F.3d at 584–85; *see also Risdal v. State of Iowa*, 243 F.Supp.2d 970, 973 (S.D.Iowa 2003) ("it is reasonable to place the burden on the [state] because it knows better than any individual when and how often it has sought the enforcement of [the procedural bar]").

The burden scheme adopted by the Ninth and Tenth Circuits resembles the sort of burden shifting scheme associated with rebuttable presumptions. *See* Fed. R.Evid. 301. For example, in discrimination cases, although the ultimate burden of proving discriminatory intent rests with the plaintiff, once the plaintiff has produced evidence to support an inference of unlawful discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the challenged decision. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If defendant satisfies this burden, the presumption "drops from the case,"

and the issue, now refined, is whether the defendant's articulated reason was a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation and internal quotations omitted). Such a burden shifting scheme serves "progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. 1089.

In the present context, it is clear that, if the petitioner fails to meet his burden under *Bennett*, the respondent prevails on the issue of procedural default. *See Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir.2003). Therefore, in essence, Respondent's assertion of the affirmative defense raises a rebuttable presumption that the procedural bar was "adequate." *See Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir.2004) (state "met its burden" where petitioner did not argue or come forward with any evidence that procedural bar was not firmly established and regularly applied). The Tenth Circuit has indicated as much in a case cited by *Bennett*. *See Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88, 148 L.Ed.2d 49 (2000) (because petitioner failed to carry his burden under *Hooks v. Ward*, "we may presume that the state procedural rules at issue in this case are adequate grounds for barring habeas review of his federal claims"); *see also Nickerson v. Roe*, 260 F.Supp.2d 875, 892 (N.D.Cal.2003) ("Nickerson has not challenged the adequacy of the asserted timeliness bar and therefore has not met his burden under *Bennett*. The court must therefore assume that the denial of Nickerson's state habeas petition rested on an adequate as well as independent state law ground."). The presumption appears to be a "bursting bubble" presumption which "drops from the case" if the petitioner

meets his interim burden. *Cf. Nunley v. City of Los Angeles,* 52 F.3d 792, 796 (9th Cir.1995) (Rule 301 of the Federal Rules of Evidence adopts "bursting bubble" approach).

Precisely how a petitioner might meet his or her burden to place "in issue" the alleged inadequacy of California's timeliness bar appears somewhat uncertain. The petitioner's burden must be something short of producing records and authorities sufficient to "prove" the inadequacy of the procedural bar, for to require such a showing effectively would be to place upon the petitioner the burden of obtaining and producing the very sort of proof that, in the words of *Bennett,* resides in the "hands" of the state. *Bennett,* 322 F.3d at 585; *see also Hooks v. Ward,* 184 F.3d at 1216–17 (state is "undoubtedly in a better position to establish the regularity, consistency and efficiency" with which it has applied its procedural rule).

This Court therefore declines to interpret *Bennett* to require a petitioner to come forward with evidence sufficient to "prove" the inadequacy of a procedural bar, an affirmative defense as to which the state now bears the ultimate burden of proof. Particularly in light of the liberal pleading standard applicable to affirmative defenses,[7] the petitioner's interim burden should be understood as a means to "sharpen" and refine the procedural default issue so as afford the state, with its greater access to information, an opportunity to meet its burden of proof. *See Hooks v. Ward,* 184 F.3d at 1217 ("On

remand, if Hooks believes Oklahoma's procedural bar to be inadequate, he must place that issue before the district court in a clear way."). Thus understood, the petitioner's interim burden does not encompass a level of specificity obtainable only through review of "records and authorities" in the "hands" of the state.

What Petitioner's interim burden does encompass remains unclear, however. In *Wood v. Hall,* 130 F.3d 373 (9th Cir.1997), *cert. denied,* 523 U.S. 1129, 118 S.Ct. 1818, 140 L.Ed.2d 955 (1998), the court ruled that Wood had "failed to show" that the state applied its procedural bar selectively or that the bar was ambiguous or unsettled. Wood had not "demonstrated that Oregon has treated similarly situated litigants differently nor has he shown that Oregon applies its rule so infrequently that he was legitimately confused ...." *See Wood v. Hall,* 130 F.3d at 377–78.[8] *Bennett* opined that its burden shifting scheme was "not inconsistent with our holding in *Wood [v. Hall, supra* ] that the petitioner there had not put forth sufficient evidence of inconsistency," *see Bennett,* 322 F.3d at 586 (emphasis added). This part of the opinion seems to suggest that the petitioner must offer "evidence" to meet the Petitioner's burden. However, elsewhere *Bennett* states that the petitioner only must "*assert* [ ]" factual allegations showing the inadequacy of the state's procedural bar. *See Bennett,* 322 F.3d at 586 (emphasis added). This part of the opinion suggests that the petitioner may meet the burden by allegations ("assertions") alone. In a

---

7. The state need only plead the affirmative defense of procedural bar in accordance with the liberal pleading requirements of Rule 8 of the Federal Procedure. *See Wyshak v. City National Bank,* 607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense. [citations].").

8. Although *Wood v. Hall* held that the petitioner did not "show" or "demonstrate" the inadequacy of the procedural bar, the *Bennett* Court denied any inconsistency between the burden of proof scheme announced in *Bennett* and that applied in *Wood v. Hall. Bennett,* 322 F.3d at 586.

recent case applying the *Bennett* proof scheme, the Ninth Circuit ruled that the petitioner had not met the petitioner's burden with respect to California's *"Lindley"* bar,[9] because the petitioner did not "argue or come forward with any evidence that the *Lindley* rule is not firmly established and regularly followed by the California courts." *See Carter v. Giurbino*, 385 F.3d at 1198.

In light of the above discussion, and with some trepidation, this Court concludes that a petitioner may meet the interim burden under *Bennett* by "asserting" the existence of case law or "evidence" which appears on its face to show an inconsistent application of the procedural bar.[10] If the petitioner meets this burden and thus refines the inconsistency issue, the state must marshal the "records and authorities" to refute the petitioner's allegations and meet the state's ultimate burden of proof.

**B. Discussion**

■ In an attempt to meet his burden, Petitioner relies upon the following: (1) the California Supreme Court's denial on the merits of a habeas petition in Petitioner's other criminal case; (2) the fact that the Superior Court and the Court of Appeals denied Petitioner's habeas petitions on the merits just before the California Supreme Court invoked the timeliness bar against Petitioner; (3) letters from the clerk of the California Supreme Court advising petitioners there is no time limit for filing a habeas petition; (4) minute orders in other cases; and (5) the absence of applicable post-*Clark* case law curing the pre-*Clark* inadequacies in the timeliness bar. As discussed more fully below, Petitioner's assertions that the California courts inconsistently applied the timeliness bar in Petitioner's cases, and represented to inmates that no time limit applied to an initial state habeas petition, suffice to meet Petitioner's interim burden under *Bennett*.[11]

**1. The California Supreme Court's Unexplained Denial of Petitioner's Other Habeas Petition**

As indicated above, in 1987 Petitioner suffered convictions in two other cases, Los Angeles County Superior Court Case Nos. A470545 and A470930. On February 2, 1999, Petitioner filed a habeas corpus petition in the California Supreme Court (No. S076386), challenging his 1987 sentence in case number A470545 (*see* Respondent's Lodgment 3). On June 23, 1999, the California Supreme Court ordered the Director of the Department of Corrections to show cause before the Los

---

**9.** *See In re Lindley*, 29 Cal.2d 709, 177 P.2d 918 (1947) (challenge to the sufficiency of the evidence cannot be brought on habeas corpus).

**10.** Although the opinion in *Carter v. Giurbino* acknowledges that, under *Bennett*, the state bears the "ultimate burden of proving inadequacy," the opinion also states that the petitioner did not meet the petitioner's "burden of persuasion." *Carter v. Giurbino*, 385 F.3d at 1198. Yet, only the party bearing the "burden of proof" generally bears the "burden of persuasion." *See, e.g., Bennett*, 322 F.3d at 585; *see generally, Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 274–75,

114 S.Ct. 2251, 129 L.Ed.2d 221 (1994) (discussing mid-twentieth-century "emerging consensus" that burden of proof signified burden of persuasion). In any event, the burden scheme set forth in *Bennett* remains authoritative notwithstanding any implication to the contrary in *Carter v. Giurbino*. One panel of the Court of Appeals generally may not overrule another. *See Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir.2004) ("We are, of course, powerless to overrule the decision of a prior Ninth Circuit panel. [citation].").

**11.** This Court need not and does not reach the issue of whether Petitioner has, or could, meet his burden in some other manner.

Angeles County Superior Court why Petitioner should not be entitled to the relief sought (*see* Respondent's Lodgment 4; *see also* docket entry, Order dated June 23, 1999, in *In re Bennett*, Cal. Supreme Court Case No. S076386, available at *www.courtinfo.ca.gov* ).

A California court issues an order to show cause if the court finds that the petitioner's factual allegations, taken as true, establish a prima facie case for relief. *See People v. Duvall*, 9 Cal.4th 464, 474–75, 37 Cal.Rptr.2d 259, 265, 886 P.2d 1252 (1995). Petitioner contends that the fact that the California Supreme Court granted an order to show cause in case number S076386 on June 23, 1999, while applying a timeliness bar five months later in his petition in case number S080389, shows the California Supreme Court inconsistently applied its timeliness bar at the time of Petitioner's purported default (Pet.Supp. Brief, pp. 11–12). These factual allegations do appear to show, on their face, that the California Supreme Court applied the timeliness bar differently to "similarly situated litigants," *i.e.*, Petitioner in two different cases, during the relevant time period. Hence, this showing suffices to meet Petitioner's interim burden and to shift the burden of proof to Respondent. *Cf. Valerio v. Crawford*, 306 F.3d at 777–78 (state procedural rule barring post-conviction court from hearing claims not presented in earlier proceedings inadequate where, *inter alia*, the state supreme court denied one claim in the petitioner's first petition on the merits in an unpublished order without mentioning the petitioner's failure to assert the error at trial or on direct appeal, but the same court subsequently denied other claims in the petitioner's sec-

ond petition for failure to assert those claims in the first petition).

■■■ Respondent offers a response to Petitioner's showing, although only in the context of arguing Petitioner has not met his burden under *Bennett*. Respondent contends that the California Supreme Court must have considered and denied the petition in case number S076386 on the merits pursuant to an assertedly well-established exception to the timeliness requirement for a collateral challenge to an allegedly unauthorized sentence (Resp.Supp.Brief, pp. 12–13). *See In re Harris*, 5 Cal.4th 813, 842, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993); *In re Birdwell*, 50 Cal.App.4th 926, 929, 58 Cal.Rptr.2d 244, 246 (1996). However, in *In re Jones*, 32 Cal.Rptr.2d 473 (1994), the Court of Appeal applied the *Clark* timeliness bar to a collateral challenge to the petitioner's allegedly unauthorized sentence, ruling that Jones' delay of approximately fourteen years before seeking habeas relief foreclosed such relief.[12] Thus, the Court of Appeal's opinion in *Jones* permits an inference that the California courts did not apply the sentencing error exception to California's timeliness bar consistently during the period of Petitioner's "continuous post-*Clark* default." Therefore, the sentencing error exception asserted by Respondent does not necessarily explain the California Supreme Court's disparate treatment of Petitioner's two habeas cases.

### 2. *Decisions of the Superior Court and the Court of Appeal Denying Petitioner's Petitions on the Merits*

Prior to filing his California Supreme Court habeas petition, Petitioner filed peti-

---

**12.** Although in denying review in *In re Jones* the California Supreme Court ordered that the opinion not be officially published, this Court may consider an unpublished opinion in determining the adequacy of the procedural bar. *See Powell v. Lambert*, 357 F.3d at 879.

tions in the Los Angeles County Superior Court and the Court of Appeal challenging his 1986 conviction. The Superior Court denied the petition on March 1, 1999, on the ground that there were "no grounds for relief shown" (Petition, Ex. F). The Court of Appeal denied the petition on May 25, 1999, without comment or citation to authority (Petition, Ex. G). The Court of Appeal's disposition is deemed to be a denial on the merits. *See Chavis v. LeMarque,* 382 F.3d 921, 926 (9th Cir.2004); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). The fact that, during the relevant time period, two California lower courts denied Petitioner's petitions on the merits, without mentioning untimeliness, while the California Supreme Court soon thereafter applied the timeliness bar, shows inconsistent application on the face of the decisions.[13]

Respondent contends that this Court may not consider lower court opinions in determining the adequacy issue. This contention lacks merit. Both the Supreme Court and the Ninth Circuit have looked to lower court opinions in making adequacy determinations. *See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 85–86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Powell v. Lambert,* 357 F.3d at 877–78; *Melendez v. Pliler,* 288 F.3d 1120, 1126 (9th Cir.2002); *Martinez v. Klauser,* 266 F.3d 1091, 1093 (9th Cir.2001); *see also Smith v. State of Idaho,* 383 F.3d 934, 938 n. 6 (9th Cir.2004) (dictum).

Respondent also argues that Petitioner has not shown the lower court petitions were substantially the same as his California Supreme Court petitions (*see* Resp. Supp. Brief, p. 19). It is apparent from the Petition and Petitioner's Reply, however, that both lower court petitions involved the same conviction and sentence as that challenged in his California Supreme Court petition. In all probability therefore, each of these petitions presented similar timeliness issues (*see* Petition p. 4; Reply, p. 2); *see also Bennett,* 322 F.3d at 578 (describing Petitioner's lower court petitions). At a minimum, Petitioner's assertion of the similarity suffices to carry Petitioner's interim burden under the circumstances of this case.

### 3. Letters From the Clerk of the California Supreme Court

Petitioner also relies on a letter, dated June 15, 2004, in which a deputy clerk of the California Supreme Court informed Petitioner "[t]here is no time limit to file an original petition" (Reply, p. 21; Petitioner's Request for Judicial Notice, Ex. 3). Petitioner contends the clerk made a similar statement in a July 2, 1997 letter to another California inmate, inmate Appleberry, and in letters to "other inmates as well" (Pet.Supp.Brief, p. 11). Although Petitioner does not provide a copy of the Appleberry letter, this letter was referenced and appended to an amicus brief filed in the Ninth Circuit (*see* Petitioner's

---

**13.** It would be the rare procedural bar that courts would invoke every time the bar has potential application. In the interests of judicial economy, courts may be expected to be selective in invoking most procedural bars. When, for example, a claim is frivolous on the merits but involves a difficult or uncertain application of a procedural bar, courts may be expected to deny the claim on the merits and avoid the difficult or uncertain issues surrounding the procedural bar. *Cf. Barrett*

*v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir.), *cert. denied,* 528 U.S. 846, 120 S.Ct. 120, 145 L.Ed.2d 102 (1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"). If state courts employ such efficient methods too often, however, the state courts apparently run the risk of rendering the procedural bar unenforceable in federal habeas proceedings.

Request for Judicial Notice, Ex. 2, p. 13). Respondent does not dispute the existence or contents of the Appleberry letter. Indeed, Respondent candidly allows that the clerk's statements to Petitioner and Appleberry could "conceivably could be considered misleading" (Resp.Supp.Brief, p. 11).

Petitioner's allegations, and the letters, permit the conclusion that, at least commencing in 1997 and continuing through the remainder of the relevant default period, the California Supreme Court represented to state prisoners that there was no time limit applicable to the filing of an original habeas petition in that Court. In light of the California Supreme Court's concurrent practice of denying petitions for substantial and unjustified delay, such advisements could render potential petitioners "legitimately confused" about the timeliness bar. *See Wood v. Hall,* 130 F.3d at 378.

Respondent argues that Petitioner has not alleged he received, or knew of, such letters during the default period (Resp.Supp.Brief, p. 11). Whether Petitioner specifically relied upon any such representation is not the issue. The issue, as to which these letters are decisive, is whether Petitioner has carried his interim burden to show that the California Supreme Court inconsistently applied the timeliness rule in "actual practice." *See Powell v. Lambert,* 357 F.3d at 879.

---

**14.** Petitioner's success in meeting his burden is, in large measure, the product of happenstance. Unlike many state prisoners, Petitioner had relevant experience in his own second criminal case and in his own lower court habeas proceedings. Other state prisoners have not been so fortunate. *See, e.g., Dossman v. Newland,* 2004 WL 302335 *7 (N.D.Cal. Feb.12, 2004) (petitioner could not meet his burden of proof under *Bennett* where the only proof available consisted of state courts' unexplained "postcard denials" of habeas petitions). One is tempted to question

### CONCLUSION

Petitioner has met his interim burden under *Bennett.*[14] Therefore, the burden of proof shifts to Respondent to show the adequacy of the timeliness bar post-*Clark.* Respondent makes no effort to meet this burden.[15] Hence, the timeliness bar does not preclude this Court's consideration of the merits of Petitioner's claims.

### RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Revised Report and Recommendation; (2) denying Respondent's Motion to Dismiss; and (3) setting an appropriate schedule for briefing the merits of Petitioner's claims.

the fairness of permitting federal court rulings involving the same state procedural rule to vary according to such happenstance.

**15.** Respondent's failure is understandable. Given the absence of California Supreme Court opinions applying post-*Clark* timeliness bars in noncapital cases and *Bennett's* proscription against using pleadings and records in case files to explain the meaning of cryptic post-*Clark* minute orders, Respondent had little effective choice.